THE CITY OF WINFIELD v. THE WINFIELD WATER COMPANY.

1. CITY — *Contract with Water Company — Enforcement.* The city of Winfield entered into a contract with the Winfield Water Company for the construction of a system of waterworks, and supplying the city and its citizens with "well-settled and wholesome water." The city contracted for certain rates for the use of hydrants in the extinguishment of fire, flushing of gutters, etc. The company agreed to furnish water to the city free at certain public places, and to furnish it to the citizens of the city at certain rates. *Held,* That it is not only the right of the city authorities, under the contract between said parties, but it is their duty, to enforce the terms of the contract as to the quality of the water supplied, not only to the city for public purposes, but also to private citizens for private uses.

2. CONTRACT — *Action to Cancel — Notice.* This action was brought by the city to obtain a cancellation of the contract between the city and

the water company. It is not shown that any notice or demand was ever served by the city authorities on the defendant requiring it to so perfect its system as to be able to furnish a supply of well-settled and wholesome water, as provided by the contract, within a reasonable time, or informing it of any purpose on the part of the city to amend the contract. *Held*, That before a court of equity will cancel such contract, after the construction and use for a long period of time of a system of waterworks, it must appear that the defendant has been fairly notified of the defects in the system, and the demands of the city for the improvement thereof, and a reasonable time must have been given the waterworks company to comply with its contract.

*Error from Cowley District Court.*

ACTION by the *City of Winfield* against the *Winfield Water Company*, to cancel a contract for supplying the city with water. A demurrer to the petition was sustained, and the plaintiff comes to this court. The opinion states the material facts.

*McDermott & Johnson*, for plaintiff in error:

In the case of *Farmers' Loan and Trust Co. v. City of Galesburg*, 133 U. S. 156, almost an identical state of facts existed, and Justice Blatchford, in the opinion, holds that the failure of the water company to furnish water of the quality and in the quantity required by the ordinance gave the city a right to have the ordinance annulled, and entitled the city to maintain an action to set aside and annul it. It is true, in that case, that the city first repealed the ordinance granting the franchise, but that fact was not deemed of importance in determining the right of the city to the relief sought, and was not referred to by the court in its decision. The repeal of the ordinance by the city would not, of itself, have canceled the contract, or avoided the necessity of a suit for the purpose of annulling it. It would amount to nothing more than the expression of an intention, on the part of the city, to treat the violation of the contract by the water company as a rescission of the same, and this intention is expressed just as forcibly and as effectively by the bringing of this action as it would by a formal repeal of the ordinance.

This court, in the case of *Water Works Co. v. City of Burlington*, 43 Kas. 725, has decided that the repeal of the ordinance is not necessary. The court says: "The city has a right to declare a forfeiture, but is not bound to do so. It may resort to other remedies." That is, it may bring an action to set aside and annul the ordinance, thereby relieving itself of all litigation that might arise from a persistent attempt on the part of the company to collect hydrant rental. In fact, in this case, suit is brought every six months to recover hydrant rental, and the determination of one case, as urged by counsel for defendant in error, does not determine any of the others. In the present action the whole matter may be determined once for all. We submit, then, that the petition clearly shows a violation of the contract by the water company, and, in that respect, is certainly sufficient to entitle the city to a trial of the matters therein set forth.

The only question raised by the pleadings in this case is the sufficiency of the petition and the capacity of the plaintiff to maintain the action. The demurrer does not raise that question, and the matter is not before the court. We know that the question of jurisdiction is never waived, and may be raised in the supreme court for the first time; but we insist that the question must be presented to court in some way, and in a way that will enable the opposite party to meet the issue. Nothing of this kind has been done in this case.

*Eaton, Pollock & Love*, for defendant in error:

The court below sustained this demurrer generally, and the plaintiff elected to stand by its petition, and judgment of dismissal was entered. We contend that there is no error in this judgment. The petition does not state a cause of action, because it shows upon its face that an adequate remedy at law exists for all of the grievances of which the plaintiff in error complains, and shows no right of action in a court of equity for the rescission of the contract.

The city cannot maintain an action to cancel and rescind the contract unless it shows a state of facts bringing it within

the rules required by the established precedents in courts of equity, and there is no averment in the petition that brings the case within such rules.

Counsel for plaintiff in error cite the case of *Water Works Co. v. City of Burlington*, 43 Kas. 725, in support of the proposition that this action can be maintained. In the ordinance of the city of Burlington creating the contract mentioned in that case, the right was reserved by the city to repeal the ordinance in specific terms, and it was not a case in which the city attempted to cancel or rescind the contract, and there is nothing in the opinion that supports the claim of counsel for the plaintiff in error.

The only other case cited is *Farmers' Loan and Trust Co. v. City of Galesburg*, 133 U. S. 156, and we contend that this case does not in any way support the position of the counsel for the plaintiff in error, or in any way justify the action. In this case the city had repealed the ordinance, and had taken possession of the water mains; had destroyed the connection between the works constructed by the company and some old works that were formerly owned by the city, which the water company had entered into a contract to purchase, which contract was executory. The water company in the Galesburg case failed to furnish water of any quality to the city, and the court, in the decision of the case, throughout the entire opinion, comments upon the fact that the city, on the 12th day of May, 1885, had repealed the ordinance creating the contract between the water company and the city, and, just before bringing the action, had taken possession of its mains, which the water company had agreed to purchase, and "cut and destroyed the connections of the same with the other mains of the water company, and took up and carried away the hydrants and faucets of the water company connected therewith, and entirely deprived the company of the use of the same."

A court of equity will not rescind a contract upon the ground of a failure to perform, and will exercise its jurisdic-

tion only in cases where fraud or mistake occurs. *Thompson v. Jackson*, 3 Rand. 504, 15 Am. Dec. 721; *Falls v. Carpenter*, 1 Dev. & Bat. Eq. 237, 28 Am. Dec. 592; *Burton v. Stewart*, 3 Wend. 236; *Perley v. Balch*, 23 Pick. 283, 34 Am. Dec. 56.

The petition impliedly admits that the city is in the full use of the water furnished by the water company under the contract; that it is complaining only of the quality of the water and some restrictions which have been imposed upon private consumers. This will not justify a cancellation of the contract, and hence the court committed no error in sustaining the demurrer to the petition, and rendering judgment of dismissal. *Pearson v. Crooks*, 115 N. Y. 539, 12 Am. Rep. 831; *Iron Co. v. Pope*, 108 N. Y. 232.

The city, in the exercise of its statutory authority, made a contract with the water company by passing ordinance No. 167. This was a legislative act on the part of the city. An action to rescind the contract cannot be maintained while this ordinance is in force. The city must repeal this ordinance before bringing this action, and before a decree rescinding the contract can be obtained. It must be shown, and the petition must aver, that the city has taken the necessary steps upon its part to rescind the contract, by a repeal of the ordinance. So long as it does not exercise its right of repeal, the ordinance stands as an obligation upon the water company to furnish water to the city, and for the city to pay hydrant rental. There is no question but that the city has the right, without any provision of the contract, to repeal the ordinance if it so desires, leaving the water company to its action for damages, and without this repeal the action cannot be maintained. The petition avers nothing done on the part of the city toward a repeal of the ordinance, and hence states no cause of action. Dill. Mun. Corp., §§ 314, 451. See, also, *City of Terre Haute v. Lake*, 43 Ind. 480.

The city cannot annul the contract by serving notice that it will no longer proceed with it or pay under it. *Davenport*

*G. L. & C. Co. v. Davenport,* 13 Iowa, 229. So that the act of the city in refusing to pay hydrant rental will not amount to a determination to rescind the contract.

The opinion of the court was delivered by

ALLEN, J.: This was an action brought by the plaintiff in error in the district court of Cowley county, to obtain a cancellation of its contract with the water company for supplying the city and its inhabitants with water. The material averments of the petition, so far as they are necessary for consideration in this case, are in substance as follows: That the plaintiff is a city of the second class; that the defendant is a corporation organized under the laws of Kansas; that on the 17th day of January, 1883, an ordinance was duly passed by the mayor and council of said city, entitled "An ordinance contracting for and providing for a system of waterworks for the city of Winfield, Cowley county, Kansas, for domestic, sanitary and other purposes, and regulating the rates thereof." In said ordinance it was provided, that the ordinance should be a contract between the city of Winfield and certain persons therein named, and their assigns, provided such persons or their assigns should file with the city clerk of said city of Winfield, in writing, their acceptance of such ordinance within 10 days after the taking effect thereof, commence work within 30 days after filing said acceptance, furnish fire protection for Main street, the courthouse and public schoolhouse within six months thereafter, and have the works completed and tested within six months, unless prevented by legal proceedings or other unavoidable circumstances. The petition alleges that within 10 days after the taking effect of said ordinance, the parties named therein filed with the city clerk their acceptance, in writing, of the terms, provisions, etc., of said ordinance; that afterwards they filed with said clerk a notice of their assignment of said ordinance and contract to the defendant, and that the defendant at the same time, by its proper officers, filed its acceptance, in writing, of the terms and provisions of said ordinance. A

copy of the ordinance is attached to the petition. We quote the sections thereof which are necessary for a proper understanding of the case.

"SECTION 1. That the right-of-way along the streets and alleys, and the privilege to construct, operate and maintain a system of waterworks within the corporate limits of the city of Winfield, for supplying the city and citizens with water for domestic, sanitary and other purposes, as well as for the better protection of the city against disaster from fires, be and is hereby granted to Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, of the city of Winfield, Cowley county, Kansas, their successors and assigns, for the term of ninety-nine (99) years from the passage of this ordinance."

"SEC. 5. That in consideration of the benefit that will accrue to the city of Winfield by the construction of such a system of waterworks as contemplated herein, the city agrees to rent, and does hereby rent, from the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, and their successors and assigns, for and during the term of twenty-one (21) years, forty (40) double-discharge hydrants, at an annual rental of $3,000 per annum, payable semiannually in equal installments, on the 15th day of January and July of each and every year, with legal rate of interest after maturity; said hydrants to be located at such places as the mayor and city council may determine; and if more hydrants than forty (40) are required on the first five (5) miles and twelve hundred and seventy (1,270) feet of mains as provided herein, the city shall pay the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, their successors and assigns, the cost of erecting such additional hydrants on the original plant of mains as above, but shall pay no rent therefor, but shall pay to the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, their successors or assigns, from time to time, any actual or necessary cost of repairs to such extra hydrants, but the penalties hereinafter stated shall not apply to these extra hydrants."

"SEC. 7. All public hydrants shall be used exclusively for the extinguishment of fires, necessary drill and practice of

hose companies, and the flushing and washing of the city sewers and gutters; but in all such washings and flushings there shall not be more than two hydrants used at any one time, nor more frequently than twice in any one week, nor longer than two hours at any one time, nor discharge through an orifice greater than one and one-half inch in diameter."

"SEC. 13. This ordinance shall be a contract by and between the city of Winfield, in the county of Cowley, state of Kansas, and the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, and their assigns, and shall be binding upon all parties with equal force and effect, provided the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, or their assigns, shall file with the city clerk of the said city of Winfield, in writing, their acceptance of this contract and ordinance within 10 days after it takes effect, and commence work within 30 days after filing said acceptance, and furnish fire protection for Main street, the courthouse and the public schoolhouse within six months thereafter, and have the works completed and tested within six months thereafter, unless pre-prevented by legal proceedings or other unavoidable circumstances.

"SEC. 14. The city council shall pass all necessary ordinances with penalties for the protection of said works and the property thereunto appertaining, when requested to do so in writing. And the said city of Winfield hereby expressly agrees, as a part of this franchise and contract, that it will, upon the request in writing of the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, or their assigns, proceed without delay to exercise its rights of eminent domain in the matter of condemnation of any lots, parcels or pieces of ground, or of water, or of any water privileges, that may be necessary to the proper and convenient construction and maintenance of the system of waterworks in this ordinance contemplated and provided for: *Provided*, That the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, or their assigns, shall pay all costs and expenses incident to such condemnation proceedings, including the cost of all property so condemned: *And provided further*, That the right to the free and exclusive use and enjoyment of all the property

so condemned shall vest and remain in the said Frank Barclay, J. L. Horning, J. Wade McDonald, J. B. Lynn, W. P. Hackney, and M. L. Robinson, and their assigns, so long as this franchise and contract shall be and remain in force and effect."

"SEC. 17. That the following maximum rates shall be annual and become part of this franchise: [Here follows list of rates to be charged private consumers of water. Within this list of rates occur 'churches, free,' 'city offices, free,' 'schools, free,' 'two public drinking and watering fountains to be erected by the city, free.'] The said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, and their successors and assigns, agree to keep said works always in operation, and supply in ample quantity the city and inhabitants thereof with well-settled and wholesome water.

"SEC. 18. That the said Frank Barclay, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, or their assigns, shall submit to the city council for their approval all rates not provided for in this ordinance, and shall have the right to make all the needful rules, regulations and provisions for the protection of said waterworks and their operation, for tapping of mains, proper size of service pipe, and for shutting off water for nonpayment of water rent by private consumers, or for undue waste or any wrongful use of water by private consumers; and they shall have the right to regulate the plumbing and service-pipe charges, except in houses and buildings, but such charges, together with charges for fixtures, valves, hydrants, and other appliances, shall not exceed the customary charges for same class of material and labor in other places.

"SEC. 19. That the said Frank Barclay, J. L. Horning, J. Wade McDonald, W. C. Robinson, J. B. Lynn, W. P. Hackney, and M. L. Robinson, and their assigns, shall be required under the provisions of this ordinance to do the business pertaining to said waterworks within the corporate limits of the said city of Winfield."

The petition further alleges, that the city has in all respects fully discharged and performed all the obligations resting on it by the terms of its contract, and then avers as follows:

"*Eleventh.* The plaintiff further avers, that said defendant, the Winfield Water Company, has persistently failed, neglected

and refused to supply in ample quantity said city and the inhabitants thereof with well-settled and wholesome water, but has persistently, wrongfully, and in violation of the intent, provisions, conditions and agreements of said ordinance and contract, and against the express requirements thereof, furnished said city and the inhabitants thereof with unsettled and unwholesome water; that the water now being furnished by said defendant, and which has been so furnished for a continuous long period of time, is not and has not ever been settled or wholesome, and is and has been at all times unfit for domestic use or sanitary purposes; and said defendant has ever failed and neglected to furnish and provide said city and the inhabitants thereof with well-settled and wholesome water.

"*Twelfth.* That said defendant has also failed and refused, in violation of the express terms of said contract and ordinance, to provide and furnish the inhabitants of the said city of Winfield water for domestic and private consumption at the rate and in the manner intended and contemplated by the terms and provisions of said ordinance and contract; and said defendant, in utter disregard of the provisions and requirements thereof, and in violation of said terms and provisions, wrongfully and without any authority therefor, imposed upon and required, and is now imposing upon and requiring, private consumers of water to pay exorbitant and unauthorized rates and prices for uses desired; and said defendant has wrongfully and exorbitantly imposed and attempted to impose upon private consumers of water rates and charges for domestic and private use and uses of water other and different from the water rates and prices fixed and established by said contract, and has, without the consent and approval of the city council of said city, fixed and imposed extravagant and exorbitant rates and prices for water service, uses and privileges not provided in said contract; and has, by unjust, unauthorized and arbitrary rules and regulations, imposed and enacted by said defendant and its agents for such purpose, refused, and persisted therein, to furnish and provide inhabitants of said city with water for private and domestic use or uses without paying for uses not demanded or needed, thereby unjustly and wrongfully depriving citizens from enjoying the benefits and privileges of a system of waterworks as contemplated and intended by said contract; and said defendant refused, and does refuse, to furnish and provide the inhabitants

of said city with water for domestic and private use or uses at the rate and rates provided in said ordinance.

"*Thirteenth.* Plaintiff further says, that said defendant for two years last past has failed and neglected, and now fails and neglects, to transact the business pertaining to said waterworks within the corporate limits of said city of Winfield, as provided and contemplated in said ordinance; that during said time it has failed to have a meeting of its board of directors in said city or in the state of Kansas; and has only been represented in said city by an agent inexperienced in the business pertaining to said waterworks, and incapable, for want of authority from said defendant in that respect, to manage and conduct the affairs of said waterworks in said city, and, on account thereof, said city and inhabitants have been prevented from making complaints or in any other way adjusting or settling any difficulties arising between said defendant and said plaintiff or the inhabitants of said plaintiff.

"*Fourteenth.* That because of the facts, wrongs and transgressions hereinbefore stated and alleged, the defendant has violated, and is persistently violating, such contract and ordinance, and on account thereof said waterworks is of no practicable benefit to said city of Winfield and the inhabitants thereof; that said city and the taxpayers therein, as a matter of justice and equity, should be relieved and absolved from further responsibility or liability under or by reason of said contract and ordinance, and the same should be canceled and annulled, and the franchises, rights and privileges therein granted to said defendant should be forfeited, canceled, annulled, and set aside, and the city of Winfield should be relieved from the payment of any hydrant rental claimed or to be claimed by or to said defendant under or by virtue of said contract and ordinance."

The petition concludes with a prayer for the cancellation of the contract, and of the privileges and franchises of the defendant. There is no averment in the petition either that the ordinance has been repealed or that notice has been given to the defendant that the contract between it and the city would be canceled or treated as annulled, unless the defendant should so improve its works as to be able to supply the city with such water as the ordinance requires, and cease its violation thereof in other respects.

This case is submitted to us with a case brought by the water company against the city for the recovery of hydrant rentals. Both cases have been argued together, and it seems to be the desire of both parties to have their rights growing out of the contract between the city and the water company fully determined by the court in these cases. While the cases are not consolidated, we are enabled to gain a more clear understanding of this case, in which the court sustained a general demurrer to the petition, from the record in the other case, which was tried before the court and a jury, and the whole subject of the controversies between the parties extensively investigated.

The main questions urged for our consideration in this case are, (1) whether the contract is divisible in its character; and (2) whether the city may, in its corporate capacity, enforce the provisions of the ordinance with reference to the quality and supply of water for private consumers, and the terms imposed on them, as well as those which relate to supplying the city with water for public purposes.

It is strongly contended by the defendant in error that, inasmuch as payment is required from the city only for the use of hydrants for extinguishment of fires, and other public purposes, the city is only entitled to complain in case of a failure to supply water sufficient in quantity and suitable in quality for the public purposes of the city. In order to reach a correct consideration of the several provisions of the ordinance, it is necessary to take a comprehensive view of all its provisions, and to construe it in the light of the duty that the corporate authorities of a city owe to the individuals residing within its corporate limits. While the provision of suitable appliances and a necessary supply of water for the extinguishment of fires is usually made by cities at the public expense, their use is mainly for the preservation of the property of individuals. There can be no matter of higher public concern to every city than the supply of pure and wholesome water for all useful purposes, and, as population becomes more and more compact and cities grow, the ability of the individual

6—51 KAS.

member of the municipal corporation to supply his individual wants in that direction constantly diminishes, and in all the larger places it becomes a matter of absolute public necessity that the city itself should directly or indirectly provide the supply.　The preservation of favorable sanitary conditions is one of the very highest duties devolving on city authorities, and nothing else so directly and materially affects the health of a community as the character of its water supply.　We think the ordinance which became a contract between the parties shows clearly that these considerations were in the minds of the parties to the contract at the time it was made. Section 1 of the ordinance grants the right-of-way in the streets and alleys to construct, operate and maintain a system of waterworks for supplying the city and citizens with water for domestic, sanitary and other purposes, as well as for the better protection of the city against disasters from fire. Section 7 provides that public hydrants shall be used exclusively for the extinguishment of fire, necessary drill and practice of hose companies, and for the necessary washing and flushing of sewers and gutters.　This section, we think, merely places limitations on the consumption of water from these hydrants by the city.　It in no manner conflicts with any provision contained in the ordinance with reference to the quality of water to be furnished.　Section 17 contains an agreement on the part of the water company to keep said works always in operation, and supply in ample quantity the city and inhabitants thereof with well-settled and wholesome water.　This section also provides for furnishing the city offices, schools and public drinking and watering fountains free.　These supplies are clearly public; they are supplies to public offices, public schools, and in public places, for the use of the public generally; and while the rates mentioned are free, it cannot be said, when all the provisions of the contract are construed together, that the water furnished the public at these places is in any sense a donation or free gift by the water company to the city or to the public.　It cannot be contended for a moment that the water company intended to furnish

water at these places "free," irrespective of the obligation of
the city to use the hydrants it contracted for, and to pay the
rental provided for in the ordinance. Free water at these
public places was unquestionably one of the inducements and
considerations which led the city to pass the ordinance and
enter into the contract with the defendant. It may be con-
ceded that dirty, foul water will extinguish fires and flush
gutters as well as pure and wholesome water; yet this contract
provides for nothing but a supply of "well-settled, wholesome
water," even for the purposes for which it should be used by
the city itself. We think that, even if it could be said that
this contract is divisible, and that the city can only enforce
the provisions of it so far as it relates to the supply furnished
the city itself, still the city has a right to insist on that quality
of water which the contract calls for. But when we consider
that the water consumed by the city through its fire hydrants
and the water consumed by the citizens for private uses must
of necessity flow through the same mains, be derived from
the same source, be of the same quality and character, it seems
to us absurd to say that the provisions made by the city au-
thorities for the benefit of the inhabitants of the city gener-
ally, and assented to by the water company, may not be
enforced by the city in behalf of the people, but may be vio-
lated by the water company at will, and that they may fur-
nish to the city, for public purposes, water of any quality that
will subserve those purposes, even though their contract re-
quires them to furnish that which is pure and
wholesome. We not only think that the city
may enforce the provisions of the contract in fa-
vor of its citizens, but we think it clearly the duty of the city
to do so. In the case of *Mott v. Water Co.*, 48 Kas. 12, it
was held:

1. City—contract
with water
company—en-
forcement.

"Where a city contracts with a water company to furnish
a supply of water for use in extinguishing fires, such supply
to be paid for by a levy of taxes upon the taxpayers of the
city, and by the terms of the city ordinance, which the water
company accepts, the water company agrees 'that it will pay

all damages that may accrue to any citizen of the city by rea-
son of a failure on the part of the company to supply a suffi-
cient amount of water, or a failure to supply the same at the
proper time, or by reason of any negligence of the water com-
pany,' there is no such privity of contract between a citizen
or resident and the water company as will authorize him to
maintain an action against it for injury or destruction of
his property by fire, caused by the failure of the water com-
pany to fulfill its contract."

Certainly no private citizen has a right to compel the water
company to perform its contract with the city. We think
that not only the right exists in, but the duty rests upon, the
corporate authorities of every city to see that the supply of
water furnished its citizens, whether through public water-
works, or, as in this case, works constructed by a private cor-
poration under a contract with the city, should at all times be
wholesome, and free from every thing that would endanger
the lives or the health of the people. We conclude, therefore,
so far as this branch of the controversy is affected, that this
contract is entire, and that the city may and should see that
all its provisions are substantially complied with.

Passing to the second proposition, we are called on to de-
termine whether the city, at the commencement of this action,
had done all that was required of it in order to entitle it to
come into a court of equity and obtain a cancellation of this
contract and an absolute discharge from all liability thereun-
der. It is contended on the part of the defendant in error,
that a repeal of the ordinance is a necessary prerequisite to the
maintenance of this action. In the case of *Loan and Trust
Co. v. City of Galesburg*, 133 U. S. 156, cited by counsel for
the plaintiff in error, it appears that the ordinance passed by
the city was repealed before suit was commenced. The facts
in that case were materially different from this. Prior to en-
tering into a contract with the water company, the city of
Galesburg owned a system of waterworks. The contract be-
tween the city and the water company provided for a sale of
the old system to the water company. The water company
contracted to furnish the city an ample supply of water, but

failed to do so. After a period of 18 months had elapsed after the completion of the works by the water company, and the company had failed to furnish water either satisfactory in quality or sufficient in quantity, the city repealed the ordinance, severed connection of the old mains with the company's works, resumed possession of that portion of the system which had formerly belonged to the city, and then brought its bill in equity, asking that all rights conferred by the ordinance and contract be annulled. The case was very fully considered by the supreme court of the United States, and the decree of the circuit court annulling the contract was sustained. It appeared in that case that the water company had never fully complied with the contract; that it had had a full opportunity to do so, and that the city, after affording the water company ample time and opportunity, had availed itself of its right to annul the contract. It will be observed in this case that the waterworks were constructed in 1883; that this action was commenced in September, 1890; and it fairly appears that the waterworks must have been in operation, whether satisfactorily or not, during all this time. In the case *of Waterworks Co. v. City of Burlington*, 43 Kas. 725, the city, in the ordinance granting the franchise to the water company, reserved the right to declare it forfeited for any failure on the part of the company to perform its contract. No such provision is contained in the ordinance in this case. In view of the large outlay necessarily made by the water company, and of the disastrous consequences and great pecuniary loss that would necessarily ensue to the company by a cancellation of the contract, we think this case should be determined in accordance with sound, equitable principles; and, while the city has the right, and also rests under the duty, to see that the water company furnishes such water as is required by the terms of the ordinance, yet the water company should have

2. Contract—action to cancel—notice.

fair notice of all objections made by the city to the kind of water furnished, and should also be afforded a reasonable opportunity to remedy any defects, either in the plan of constructing its system or in its

methods of operating it.   The defects claimed to exist in the system, and the objections urged by the city against the quality of the water, are more fully considered in the other case.

We do not think a repeal of the ordinance could have the effect to terminate the contract, because it is seldom possible for one party by its own action to relieve itself from liability under a contract mutually entered into, where no right to do so is reserved in the contract itself.   We think, however, it is essential, in order to give the city the right to terminate the contract, that it should by some regular action of the city authorities directly challenge the attention of the waterworks company to any failure on its part to perform its contract, and should fairly notify the company of the action which the city intends to take in case it persists in violating its contract. There are no averments in the petition showing that any such notice has been given, nor that any resolution or ordinance has been passed by the council on this subject.   We think that the petition must affirmatively show these facts before the aid of a court of equity can be invoked to obtain the city's release from all obligation under the contract.

It is alleged that the waterworks company has violated its contract, by imposing upon the private consumers of water rates other and different from the rates established by the contract, without the assent or approval of the city council. It would seem to us that other remedies than the forfeiture of the contract are at the command of the city and its citizens, which would be adequate for the protection of their rights in that respect.   We hardly see how the water company, by any mere regulations of its own, could impose upon the citizens higher rates for the use of water, or more burdensome terms, than are provided for in the ordinance.   It is charged in the petition, also, that the defendant has failed to transact the business pertaining to said waterworks within the corporate limits of the city of Winfield; has failed to have its directors meet there; and has only been represented in the city by an inexperienced agent; and that the city and its inhabitants have been thereby prevented from making

complaints and settling difficulties arising between the parties. We do not see that this would give the city additional ground to forfeit the contract. The whole matter depends on the question whether the water company furnishes the quantity and quality of water it has agreed to furnish, and in the manner provided in the ordinance. If it has, it makes little difference where its board of directors meet, or what title is given to the managing agent of the company. We apprehend that any notice the city did prepare to serve on the company could be served on the person in charge of the works, whether he be merely a superintendent or the president of the company, and whether such superintendent or general agent be competent or incompetent to transact business of the company. So long as the waterworks company continues to operate its system, it will, of course, have some one managing its business there; and in case it should wholly abandon the operation of its system, an entirely different question would be presented.

On the whole case, we find no error in the ruling of the district court sustaining the demurrer, and its judgment will be affirmed.

All the Justices concurring.