No. 19,590.

THE CITY OF COLUMBUS, *Appellant*, V. THE AMERICAN GAS
COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

GAS FRANCHISE—*City Ordinance—Advance Cash Deposit by Consumer—
Penalty Added for Nonpayment—Both Unlawful.* A gas company
which accepts the terms of a franchise ordinance expressly providing
that a certain specified rate shall not be exceeded, and authorizing
the shutting off of gas from any consumer in arrears for a longer
period than fifteen days, has no right to require a five-dollar deposit
or to add a penalty of five cents a thousand cubic feet for nonpayment
by a certain time in the month.

Appeal from Cherokee district court; EDWARD E. SAPP,
judge. Opinion filed June 12, 1915. Modified.

*S. L. Walker*, of Columbus, for the appellant.

*Truman T. Burr*, and *Dexter Sapp*, both of Galena, for the
appellee.

The opinion of the court was delivered by

WEST, J.: This was a suit by the city to enjoin the gas com-
pany from exacting charges in excess of those permitted by
the franchise and ordinance. Section 2 of the ordinance con-
tained an express provision that the rate for natural gas
should not exceed twenty-five cents for one thousand cubic
feet; another that the company should furnish free to the city
natural gas for light and heat in all city public buildings; an-
other that the company should have the right to shut off gas
from any consumer in arrears for a longer period than fifteen
days. It appears that the company was charging a minimum
rate of fifty cents a month, although no gas was used, and this
was enjoined by the court. The company also required citizens
to deposit five dollars where gas was installed for the purpose
of securing payment of gas bills. It was also adding a penalty
of five cents a thousand on all bills not paid by the tenth of the
month. These five-dollar and five-cent requirements were by
the court held reasonable, and the city appeals.

The familiar means used by public-service companies fur-
nishing gas, water or electricity to secure prompt payment are

the requirement of certain deposits, a charge for meter service, a minimum charge, even when no product is used, a penalty for nonpayment and the shutting off of the supply. When the gas company made its contract with the city it was doubtless familiar with these means ordinarily employed to insure the collection of a legal or proper charge, but the only one of these mentioned in the ordinance was the provision that the company should have the right to shut off all gas from any consumer in arrears for a longer period than fifteen days. No mention was made of a deposit, a minimum charge or a penalty for nonpayment.

The agreement to furnish free gas for light and heat in all city public buildings was not shown to have been violated, as the stipulation or admitted facts did not show that the room in question or the portion occupied by the city could rightfully be deemed a city public building.

Instances of judicial consideration of similar charges have usually been those involving only the reasonableness of regulations by municipalities or other public-service corporations and not, as in this case, the sole matter of contract right. In a general way, the law is settled that such companies are required to supply all patrons without partiality or discrimination, and may make reasonable regulations to insure full and prompt payment, although the courts have differed somewhat as to the reasonableness of certain means employed. (*Shiras v. Ewing,* 48 Kan. 170, 29 Pac. 320; *Cooper v. Goodland,* 80 Kan. 121, 102 Pac. 244; Note, 23 L. R. A., n. s., 410; *The State v. The Sedalia Gas Light Co.,* 34 Mo. App. 501; *Albert v. Davis,* 49 Neb. 579, 68 N. W. 945; *Gas Light Co. v. Cedar Rapids,* 144 Iowa, 426, 120 N. W. 966, 138 Am. St. Rep. 299, 309, 310; *Smith v. Capital Gas Co.,* 132 Cal. 209, 64 Pac. 258, 54 L. R. A. 769; Note, 61 L. R. A. 112 *et seq.; State ex rel. Hallett v. Seattle Lighting Co.,* 60 Wash. 81, 110 Pac. 799, 30 L. R. A., n. s., 492, and Note; *Seaton Co. v. Idaho Springs Co.,* 49 Colo. 122, 111 Pac. 834, 33 L. R. A., n. s., 1078, and Note; *Hatch v. Consumers Co., Ltd.,* 17 Idaho, 204, 104 Pac. 670, 40 L. R. A., n. s., 263, and Note.) Among the foregoing authorities may be found discussed and decided many phases of the relations and obligations of companies and municipalities supplying to their patrons the products already mentioned. A few decisions more directly in point may be briefly noticed.

In *Louisville Gas Co. v. Dulaney & Alexander*, 100 Ky. 405,. 38 S. W. 703, 36 L. R. A. 125, the charter of the company fixed. the price at "not to exceed one dollar and thirty-five cents for one thousand cubic feet, less a discount of five cents per one thousand cubic feet to all persons, including the city, except as to street lamps, paying their bills within five days after same are due." (p. 405.)    The company attempted to charge a meter rent and to uphold the same as a reasonable rule and regulation intended to apply except to small and infrequent users, but the court said:

"The company can only charge for the quantity it actually furnishes, and, to ascertain what it furnishes it must measure it—how, the consumer does not care, so it is measured correctly.  The appellees, therefore, are entitled to have their gas furnished to them already measured; and, for it so measured, they can be made to pay at the price of $1.35 per thousand feet, and no more."   (p. 408.)

It was further said that if the price were not restricted in the organic law of the corporation the question of reasonableness might arise, but that presumably the company was aware when it obtained its charter that there would be small consumers as well as large ones, but that it did not on that account reject the charter or retain the right to add to the price of the small consumer's bill.

In *Capital Gas & Electric Light Co. v. Gains*, 20 Ky. Law Rep. 1464, 49 S. W. 462, the contract between the city and the company provided that private consumers should be supplied with gas at a rate not to exceed $2 a thousand cubic feet, and it was held that the company had no right to require payment of meter rent in addition thereto.   Evidence of usage so to do was held inadmissible, such usage being inconsistent with the contract.

The appellate division of the supreme court of New York, in *City of Buffalo v. Buffalo Gas Co.*, 81 App. Div. 505, 80 N. Y. Supp. 1093, held that under a statute providing that no gas-light corporation should charge or collect rent on its meters in either a direct or indirect manner, it was unlawful to make or enforce a service charge to the consumer based on the capacity of the meters which it called a minimum gas-service bill, which meant that in the case of a consumer who did not use up to a certain limit of gas a month a charge would be made outside of that amount fixed for the gas itself.   At

24—96 KAN.

the close of the opinion it was suggested that the charge was voluntarily fixed by agreement and that it could not have been forgotten when this was done that some people would take so small a quantity of gas that it would make their business un-desirable and unprofitable, and "Presumably, as a condition of securing from the municipality certain rights and privi-leges, a schedule of rates was adopted, which, taking into ac-count the entire business, would yield adequate returns in the way of profits." (p. 509.)

In *Montgomery L. & W. P. Co. v. Watts*, 165 Ala. 370, 51 South. 726, 26 L. R. A., n. s., 1190, it was decided that a gas company whose rates are fixed by the municipality can not charge a meter rent when consumption does not reach a cer-tain limited amount each month. It was said in the opinion that the decisions are not in harmony on this question, but that the cases which generally justify such a charge are based upon ordinances or contracts worded differently from the one under consideration, or upon general principles without regard to any contract.

"However, the ordinance constitutes the charter of the company, and the contract between it and the city is for the benefit of the citizens; and the reasoning of the cases which deny such right to the company under like circumstances commends itself to our judgment. . . . If the company desired the privilege of charging more in certain cases, it should have had a provision to that effect inserted in the ordinance be-fore it accepted the same." (pp. 372, 373.)

*Phelan v. Boone Gas Co.*, 147 Iowa, 626, 125 N. W. 208, 31 L. R. A., n. s., 319, involved the right of a gas company to en-force a rule requiring security from unknown or irresponsible consumers before undertaking to serve them, but it appearing that the imposition was not attempted in good faith the reason-ableness of the rule was not passed upon. In the case-note (p. 319) it is said to be fully settled that regulations exacting payment in advance in reasonable amounts or deposits for security may be enforced, but the citations are largely of cases in which the matter of abiding by a contract was not an ele-ment.

In *State ex rel. MacMahon v. Independent Tel. Co.*, 59 Wash. 156, 109 Pac. 366, 31 L. R. A., n. s., 329, the establishment in the franchise of a telephone company of a maximum monthly rental was held not to prevent its requiring that the rentals

be paid in advance and that an additional charge be met if not paid before a specified day each month, the latter provision being upheld as a regulation to insure prompt payment at the established rate, from which portion of the opinion one of the justices dissented. In the note (p. 329) this is said to be the first case in which this question of additional charge has been raised.

With all the well-known means of enforcing prompt payment available for suggestion and adoption the company contracted with the city and accepted its franchise on a basis of charging its consumers no more than the rate specified. By requiring a deposit of $5 from each patron a fund would be created the interest on which would be of value, adding materially to the income arising from the contract rate, and of course an addition of five cents a thousand for nonpayment at a certain time in the month is plainly an additional charge, and while both of such regulations might well be deemed reasonable in the absence of an express limitation, the principle was well stated in *City of Winfield v. Water Co.*, 51 Kan. 70, 32 Pac. 663:

"We hardly see how the water company, by any mere regulations of its own, could impose upon the citizens higher rates for the use of water, or more burdensome terms, than are provided for in the ordinance." (p. 86.)

This view seems in consonance with the clear terms of the ordinance and finds sufficient support in the authorities to justify the conclusion that the five-dollar deposit and five-cent penalty were improperly required and imposed.

The cause is therefore reversed with directions to modify the decree in accordance herewith.