No. 21,942.

JOHN C. COLLINS, *Appellee,* v. THE MIAMI COUNTY GAS COMPANY, *Appellant,* et al.

SYLLABUS BY THE COURT.

1. GAS FRANCHISE—*Rules Relating to Installment of Gas Meters—Money Deposit Required in Advance.* A gas company that purchases a gas plant which is furnishing gas to the inhabitants of a city may legally establish and enforce a rule, or continue one that has been established, which requires all persons who thereafter desire to have a gas meter installed on their premises and to have their premises connected with the pipe lines so as to be supplied with gas, to deposit five dollars for the gas meter, the property of the company, and on surrender of the meter in good condition, ordinary wear excepted, and on payment of all dues for gas used, the deposit, with six per cent interest, to be returned to the depositor.

2. SAME—*Rule Requiring Money Deposit Not Discriminatory.* Under the circumstances described in the first paragraph of this syllabus, the fact that a deposit had not been required of those who had meters installed and their premises connected with the pipe lines previous to the time the rule was established, does not render its application discriminatory.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed May 10, 1919.  Reversed.

*R. E. Coughlin,* of Paola, and *Charles A. Loomis,* of Kansas City, Mo., for the appellant.

*W. L. Joyce,* of Paola, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff sought, by mandamus, to compel the Miami County Gas Company to furnish

natural gas to the plaintiff at his residence in Paola, and sought to compel the city of Paola and its mayor and councilmen to exercise the right of governmental control over the gas company and require it to furnish gas to the plaintiff according to the terms of the franchise under which the gas company operated in that city. Judgment was rendered in favor of the defendants, the city, and the mayor and councilmen; and in favor of the plaintiff, and against the gas company, which appeals.

In 1906, the city council of Paola granted a franchise to the Paola and Osawatomie Light and Fuel Company, giving to that company the right to supply Paola and the inhabitants thereof with natural or manufactured gas, and giving to the company the right "to make all needful and necessary rules and regulations to successfully operate and conduct such gas plant." The ordinance contained the following provisions:

"SEC. 7. The Paola and Osawatomie Light and Fuel Company, its successors and assigns, shall have the right to charge any consumer in arrears for more than thirty days, a penalty of ten per cent for all amounts due for gas supplied, and unless such amount remaining in arrears and unpaid shall be paid upon demand ten days after the same shall have become due and payable, the company shall have the right to shut off the gas upon three days' notice to such consumer of the intention of said company so to do. The city of Paola shall pass ordinances with penal provisions therein conformable to the State laws, prohibiting damage, imposition, fraud or waste of the gas or property of the company; and the said Paola and Osawatomie Light and Fuel Company, and its successors and assigns, may adopt such rules and regulations with reference to the management of its business, and the collection of debts due said company for gas furnished as shall be reasonably necessary to protect said company, its successors and assigns, from damage by imposition, fraud or waste. But the city does not hereby waive its right of government control over this subject matter.

"SEC. 8. Said Paola and Osawatomie Light and Fuel Company, its successors and assigns, shall furnish and maintain free, for use to all consumers applying therefor, meters of standard type and pattern for the measurement of natural gas. The actual cost and expense of putting in such meters, for all persons applying therefor within five days after passage of this franchise, shall be paid by the company whenever such expense shall not exceed the sum of three dollars ($3.00), but whenever the expense of putting in such meter shall exceed said sum, such consumer shall pay the excess, and all consumers not applying therefor within five days after the passage of this ordinance and not then taking gas by meter, shall pay the expense of putting in said meters. Said natural gas shall be

furnished to consumers through meters only. Said company may disconnect and shut off gas from all consumers who do not apply for meter within five days."

The Paola and Osawatomie Light and Fuel Company, and its successors, operated under that franchise, with an immaterial amendment as to rates, until in 1915, when the Miami County Gas Company purchased the plant and succeeded to the rights of the Paola and Osawatomie Light and Fuel Company. The Miami County Gas Company collected the full contract rate, and operated under a rule that before any consumer's premises would be connected with the pipe lines of the company, and before gas would be furnished to such consumer, five dollars should be deposited by the consumer for the gas meter, the property of the gas company, and on surrender of the meter in good condition, ordinary wear excepted, and payment of dues for gas used, the deposit, with 6 per cent interest, would be returned to the depositor. The same, or a similar, rule had been in effect prior to the purchase of the plant by the Miami County Gas Company. The rule was not applied by that company to consumers whose property had been connected with the pipe lines, and who were being supplied with gas prior to the purchase of the plant, but the rule was applied to those who desired to be connected with the pipe lines after that purchase. In 1917, the plaintiff desired that natural gas be furnished to him at his residence, and requested that a meter be installed so that gas could be furnished. The defendant refused to comply with the request unless a deposit were made according to the rule.

The court did not make special findings of fact, but did make a general finding in favor of the plaintiff, and granted a writ of mandamus against the Miami County Gas Company.

The company argues that—

"The general rule is that a public service company furnishing gas, electricity, water or telephone service may require that charges shall be paid for a reasonable term in advance, or be secured by a reasonable deposit by the consumer, and may enforce such a requirement by the refusal of service to persons who do not comply therewith."

And that—

"Where the rate to be charged for gas is fixed by contract in the franchise, and the gas company is charging the full amount of the rate so fixed by contract, and the gas company requires a reasonable deposit

47—104 KAN.

by consumers, and pays the consumer the legal rate of interest on the deposit, the gas company does not thereby violate the franchise, but is clearly exercising no more than its legal right."

An action very similar to the present one was *City of Columbus v. Gas Co.*, 96 Kan. 367, 149 Pac. 402. There the gas company collected the full contract rate, and required a deposit of five dollars to secure the payment of gas bills. No interest on the five dollars was allowed by the company to the consumer. This court said:

"In a general way, the law is settled that such companies are required to supply all patrons without partiality or discrimination, and may make reasonable regulations to insure full and prompt payment, although the courts have differed somewhat as to the reasonableness of certain means employed. . . . By requiring a deposit of $5 from each patron a fund would be created the interest on which would be of value, adding materially to the income arising from the contract rate." (pp. 368, 371.)

It is fully settled by the authorities that a gas company may enforce a regulation exacting payment in advance in reasonable amounts, or requiring that securities be deposited. (3 Dillon on Municipal Corporations, 5th ed., § 1321; 4 McQuillin, Municipal Corporations, § 1713; 2 Wyman on Public Service Corporations, § 877; 12 R. C. L. 893; Notes in 19 L. R. A., n. s., 693, 31 L. R. A., n. s., 319, 329, 43 L. R. A., n. s., 63, and L. R. A., 1915 F. 1181; and *Union Light, Heat & Power Co. v. Mulligan*, 177 Ky. 662.)

In the case last cited, this language was used:

"The general rule is that a public service company, furnishing gas, electricity, water or telephone services may require that charges shall be paid for a reasonable term in advance, or be secured by a reasonable deposit by the consumer, and may enforce such a requirement by the refusal of service to persons who do not comply therewith. . . . The only case that seems to give forth a discordant note is *Columbus v. American Gas Co.*, 96 Kan. 367." (pp. 667, 669.)

In the Kentucky case, the court required the gas company to pay interest on the deposit. In the present case, the rule established by the defendant provided that interest on the deposit would be paid to the consumer on the return of the deposit.

By declaring that the rule now under consideration is a reasonable one, this court follows the law as declared in most of the states, and follows the law announced in *City of Columbus v. Gas Company*, supra.

2. The plaintiff seeks to avoid the defendant's argument by showing that the rule concerning the deposit was not applied uniformly—that there was discrimination in the application of the rule. On the trial the plaintiff gave the names of twenty consumers who, he claimed, did not make such deposit.

If there was discrimination in the application of the rule, that discrimination would render the rule invalid; but the defendant insists that the sole question presented for decision by the trial court was the right of the plaintiff to the use of gas without making a $5 deposit, and insists that the plaintiff "now for the first time presents the question of discrimination."

The petition did not say anything about discrimination. It was drawn on the theory that the defendant could not legally demand a deposit under any circumstances. Judgment was rendered on April 13, 1918, and on that day a peremptory writ of mandamus signed by the judge of the district court was issued. That writ recited:

"That the plaintiff on October 12, 1917, and again on the 23d day of October, 1917, requested the said defendant company to furnish gas at his residence, and that the said Miami County Gas Company then refused and still refuses the said plaintiff gas, unless said plaintiff shall deposit with the said Gas Company the sum of $5.00 as and for a meter deposit to secure the return of the meter in good condition and to insure the payment by the plaintiff for the gas which he may use, and that The Miami County Gas Company demands of the citizens of Paola the full price allowed to be charged under said ordinance the sum of 30 cents per thousand cubic feet for gas, and that said ordinance provides that no more than thirty cents per thousand cubic feet shall be charged for the supply of natural gas, and that said ordinance does not provide for or require the deposit of $5.00 or any other sum before gas will be supplied."

The evidence tended to show that one of the consumers named by the plaintiff wrongfully obtained gas connection between his residence and the defendant's pipe lines; that another consumer was not required to make the deposit because he permitted the defendant to lay its pipe lines across his premises; and that all the others of the twenty named had been connected with the pipe lines, and were using gas, before the defendant purchased the plant. Giving the evidence its most favorable construction in favor of the plaintiff, it was not sufficient to show discrimination.

The peremptory writ of mandamus signed by the trial judge should be considered in connection with the general finding of the court. That writ showed why it was issued. It showed that it was issued in accordance with the theory presented by the petition. From the petition, from the evidence, from the judgment, and from the peremptory writ of mandamus, this court is persuaded that the trial court did not find that there was discrimination; therefore, the judgment cannot be upheld on that ground.

The judgment is reversed, and the cause is remanded with directions to the district court to render judgment in favor of the defendant.