I. L. ALBERT, APPELLEE, v. CHARLES H. DAVIS ET AL., APPELLANTS.

FILED NOVEMBER 5, 1896.   No. 8536.

Municipal Corporations: WATER-METERS: REGULATIONS. A city of the second class having less than 5,000 inhabitants, and owning and maintaining water-works, has not the power to require an inhabitant, as a condition precedent to the use of water, to purchase and place in position, at his own expense, a water-meter.

APPEAL from the district court of Platte county. Heard below before SULLIVAN, J.

*W. N. Hensley* and *McAllister & Cornelius,* for appellants.

References: *Jackson v. City of Ellendale,* 61 N. W. Rep. [N. Dak.], 1030; *Sheffield Water-Works Co. v. Bingham,* 25 L. R., Ch. Div. [Eng.], 451.

*Albert & Reeder, contra.*

References: *Smith v. Birmingham Water-Works Co.,* 16 So. Rep. [Ala.], 123; *Red Star Steamship Co. v. City of Jersey City,* 45 N. J. Law, 246; *Spring Valley Water-Works Co. v. City of San Francisco,* 22 Pac. Rep. [Cal.], 911; 2 Beach, Private Corporations, sec. 834c.

IRVINE, C.

The city of Columbus is a city of the second class, owning and operating a system of water-works for the supply

of the city and its inhabitants with water. The city un-
dertook by ordinance to provide that all water should be
supplied to private consumers through a meter of stand-
ard manufacture, to. be approved by the water commis-
sioner, and that the cost of such meter and of placing the
same and keeping the same in repair should be paid by
the consumer. The plaintiff was the owner of real prop-
erty within the city and a consumer of water. He neg-
lected or refused to purchase and place in position a
meter and the city was about, for that reason, to shut off
the water from his premises, when he instituted this ac-
tion against the city and Davis, the water commissioner,
to restrain such threatened action. A perpetual injunc-
tion was allowed by the district court, and the defendants
appeal.

The sole question presented is whether the city has
authority under existing laws to require consumers of
water to obtain and place in position meters at their own
expense. Our attention has been called to several cases
in the courts of this country and England where a similar
question has been considered. The authority of a mu-
nicipal corporation in the premises is, however, so purely
a question of statutory construction that the adjudica-
tions of foreign courts are practically of no assistance.

Section 69, subdivision 15, article 1, chapter 14, Com-
piled Statutes, confers the authority vested in cities of
the class of Columbus with reference to water-works. It
provides, among other things, that such cities may make
contracts with and authorize any person, company, or
corporation to erect and maintain a system of water-
works and water supply, and give such contractors the
exclusive privilege for a term not exceeding twenty-five
years to lay in the streets and alleys of said city water
mains and supply pipes and to furnish water to such city
or village and the residents thereof under such regula-
tions "as to price, supply, rent of water-meters as the
council or board of trustees may from time to time pre-
scribe by ordinance for the protection of the city, village,

or people." Further, that such cities may provide "for a supply of water for the purpose of fire protection and public use and for the use of the inhabitants of such cities and villages by the purchase, erection, or construction of a system of water-works and by maintaining the same;" that in such case "the council or the board of trustees of such towns and villages shall have power to make and enforce all needful rules and regulations in the erection, construction, use, and management of such water-works and for the use of the water therefrom; and such cities and villages shall have the right and power to tax, assess, and collect from the inhabitants thereof such tax, rent, or rates for the use and benefit of water used or supplied to them by such water-works as the common council or board of trustees shall deem just or expedient." It is further provided that "it shall be the duty of such water commissioner, subject to the supervision of the mayor and council or board of trustees, to have the general management and control of the system of water-works in the city or village, fixing the rates to be paid by the inhabitants thereof within such limits as may be prescribed by ordinance for the use of water, water meters, and hydrants."

It will be observed that there is a very general, although ill-defined power conferred to enforce all needful rules and regulations for the use of water, and to tax, assess, and collect a tax, rent, or rates for the use of water supplied; and it is contended that this grant includes the power to require the consumer to supply himself with a meter, this argument being re-enforced by the contention that the duty of the city in erecting and maintaining works ends with laying mains upon the streets, and that an inhabitant, in order to entitle himself to use water, must himself provide the necessary service and supply pipes on his own premises, and consequently, if the city sees fit to sell the water by measurement, he must, as a portion of his private water service, supply himself with the necessary meter. Whether this would be true if this general grant

of power stood alone we need not determine.   In the case
of a grant of a franchise to a private corporation the au-
thority of such corporation is to supply water "under
such regulations as to price, supply, rent of water-meters
as the council   *   *   *   may   *   *   *   prescribe."
There is no express grant of power, either to such fran-
chised corporation or to the city, in maintaining its own
water-works, to sell meters or to .compel consumers to
supply themselves with meters..  On the contrary, with
regard to cities maintaining their own water-works, there
is a provision that the water commissioner, subject to the
supervision of the mayor and council, shall have the gen-
eral management of the system, fixing the rates to be
paid for the use of water, water-meters, and hydrants.
We think that the affirmative grant.of power to fix and
collect charges for the use of water-meters excludes by
implication the power to compel consumers to furnish
their own meters.   It is contended that inasmuch as
power is vested in the city to purchase water-works al-
ready erected by a franchised corporation, and because
the grant of power to such corporation extends to the
collection of rents for water-meters, the provision with
reference to charges for the use of water-meters referring
to city ownership is made to meet the case of the purchase
by a city of private water-works which, under the first
portion of the section, have been erected, furnishing their
own meters and .charging rent therefor.   But this line of
construction would be too narrow.   Reading the whole
section, which is too long for quotation here, it is quite
evident that in the portions quoted the legislature had not
in view merely the case of purchase by a city of private
water-works already in existence, but that it was provid-
ing generally for the management of public water-works
however constructed or obtained.   We cannot better ex-
press our views upon the construction of the statute than
by quoting as follows from the opinion of the district
judge: "It is highly improbable that the legislature would
make the power to charge for the mere use of meters the

subject of an express grant, and at the same time permit the more important power of compelling consumers of water to buy and own their own meters to rest in doubtful implication. In this connection another thought occurs. The grant of a power in express terms affords always an inference against the grant of the same power by implication in the same act. If that portion of the statute from which the city claims to derive its authority is broad enough to warrant the council in ordaining that consumers of water shall buy meters, it is, of course, also broad enough to require them to rent meters; and if it is broad enough to require them to rent meters, the express provision on that subject is wholly unnecessary. To hold that both provisions of the statute mean the same thing would be to impute tautology and redundancy of expression to the legislature, which, in doubtful cases, is never permissible by the rules of construction. It is rather to be presumed that the language has been used intelligently, and that different sets of words stand for different ideas. Considering together the several provisions of the charter relating to water-meters, I conclude it was the intention of the legislature that where water is furnished by the meter system only, whether by the city itself or by some private person or corporation under its authority, the patrons of the water-works may be required to pay meter rents, but may not be required to purchase and own meters."

AFFIRMED.

POST, C. J., not sitting.