## George H. Anderson et al. v. Village of Berwyn et al.

### Gen. No. 12,004.

1. CITY COUNCIL—*power of, to prescribe character of water meters.* A city or village which undertakes to supply water to its inhabitants may designate the character of meter to be used by them.

Anderson v. Village of Berwyn.

2. CITY COUNCIL—*when resolution of, sufficient.* A resolution executive in character which is merely a reasonable step in the execution of an ordinance is valid, and a formal ordinance is not necessary.

3. INJUNCTION—*when does not lie against municipal corporation.* An injunction will not be granted against a city or village restraining it from cutting off a supply of water where a case of irreparable injury or injustice is not made out.

Bill for injunction. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed November 15, 1905.

**Statement by the Court.** George H. Anderson and his seventeen co-appellants as householders and takers of water from the waterworks of the village of Berwyn filed their bill of complaint in the court below on the 11th day of January, 1904, against the village of Berwyn, its president, board of trustees, clerk, treasurer and superintendent, the appellees in this appeal, to enjoin the defendants from refusing to supply the complainants with water from the water works of the village. The bill was afterwards amended and as amended its material allegations are as follows:

The village of Berwyn was organized under the General Municipal Corporation Act in force July 1, 1872, and the amendments thereto, in the year 1902.

On the 26th day of March, 1903, the board of trustees of the village passed an ordinance, a copy of which is set out in the bill. The first section of the ordinance provides that on and after the 1st day of May, 1903, all water sold or supplied by the village shall be paid for at the rates fixed by the subsequent provisions of the ordinance; that prior to that date the owners of all property in the village in which municipal water is used shall install a water meter of the kind to be designated by resolution of the board of trustees, which meter shall be properly attached to the service pipe so as to correctly measure all village water used on the premises; that the village shall install such

meters upon the written request of the owners of the premises, each meter to be paid for by the person for whom it is supplied, as provided by a subsequent section of the ordinance, and that after May 1, 1903, the village water shall be turned off from all service pipes as to which the owners shall have failed to install or order such a water meter; and that the water shall not again be turned on such service pipe until a meter shall have been installed upon the same, and the expense of turning off and turning on the water and the cost of installing the meter, shall have been paid.

Section 2 of the ordinance provides that the village shall upon the written request of any property owner purchase and install a water meter upon the premises of such owner to be used in connection with the municipal water supply of the village, and that the owner for whom the meter shall be so installed shall pay to the village the cost of such meter and of installing it at the rate of $1 per month, quarter-yearly.

Sections 3 and 4 of the ordinance require the owner or occupant of the premises in which any water meter is installed to keep it in repair and free from obstruction and accessible at all reasonable times to the superintendent of the village for the purpose of reading, inspecting and repairing the same; and the remaining sections of the ordinance fix the rates to be paid for water supplied by the village, require all meters used to be inspected by the proper officers of the village before being put in place, and that all meters be installed under the direction of the superintendent.

That on November 2, 1903, the board of trustees of the village adopted a resolution directing the superintendent to notify all parties who had not yet ordered or installed water meters in accordance with the ordinance that the water would be shut off unless a meter was installed or ordered on or before November 14th, and a further resolution directing the superintendent to shut off water on all property where a meter is not

Anderson v. Village of Berwyn.

installed in accordance with the provisions of the ordinance.

The bill further alleges that by reason of the ordinance and the resolution and the notices given the village authorities had determined that all users of village water must install Crown meters on all service pipes and that prior to the adoption of the resolution of November 2, 1903, some of the complainants had each caused to be installed in their residences and places of business water meters known as the Worthington water meter; that complainant Frank I. Abbott had installed two Worthington water meters; that complainants Sadler, Rose and Edgerton had installed Trident water meters; that the complainants had each received notice of the resolution of the board of trustees to the effect that the superintendent was directed to notify all parties who had not ordered or installed water meters in accordance with the meter ordinance that the water would be shut off unless meters were installed on or before November 14th, and directing the superintendent to shut off the water on all property where a meter was not installed in accordance with the provisions of the ordinance.

Complainants further allege that the meters installed by them are as accurate and measure the water used by them as economically as the Crown meters.

Complainants charge that said ordinance, resolutions and notices if enforced will have the effect of either causing the complainants to purchase and install Crown meters in their residences and places of business, thereby rendering useless and of no value the meters theretofore purchased and used, or that the water will be shut off and they will be deprived of water for themselves and their families and from protection from fire; that several of the complainants have in their residences steam and hot water heating appliances which will be in danger of being destroyed or injured or the boilers exploding and their families

be deprived of heat if the water is shut off; that the fire and water committee of the village have never approved of any other meters nor taken any action of any kind under the provisions of the resolution of the board, and that under said ordinance and resolution and orders of the board no other meter than the Crown meter can be installed in said village, even should meters of equal capacity, measurements and qualities or greater be found; and that the complainants will each be greatly and irreparably injured and damaged by the enforcement of the threatened action of said village officers unless restrained by the court.

Prayer is for a temporary injunction enjoining the defendants from shutting the water off at complainants' residences and premises and that upon a final hearing the injunction be made perpetual. The bill is verified by complainant F. J. Rose.

The joint and several answer of the defendants was filed, which admits the organization of the village; that property owners taking water from said water mains provided at their own expense the service pipes extending from said water mains in the public streets and alleys to the buildings and lots supplied with water; that none of the service pipes attached to the water mains are a part of the waterworks system, but all of them belong to abutting property owners; that water meters are always attached to the service pipes and the water meters in use in said village are part and parcel of the system for the taking by water consumers of water from the water mains and measuring the same, and are and will be the private property of the property owners using the same, and not the property of the village.

The defendants aver that during the time intervening between the time when the village began to operate the waterworks and the time of the installation of water meters in said village over forty per cent. of the water that was distributed by said village to pa-

trons of said waterworks was wasted by careless, negligent and reckless use of the water by the consumers, and on account of such waste it was impossible to supply the legitimate demands of the water consumers in said village, many of whom were unable to get water above the first floor of their dwellings and were frequently deprived of water for domestic purposes; and as a further result of such waste of water the pressure in the water mains was reduced to such an extent as to seriously impair the fire protection of said village; that because of said waste of water and the resulting impaired usefulness of the water system it became necessary for the authorities of the village to increase the supply of water or devise some means whereby the waste of water could be prevented; that the village had no means to increase the supply of water and the only alternative was to adopt measures to prevent the unreasonable and unnecessary waste of water by requiring takers of water from said waterworks to install upon their service pipes water meters and to fix the rates to be paid by water consumers for water supplied to them according to the amount of water furnished and used by them, and to that end the ordinance was passed.

The answer sets up the amendment to the resolution passed on May 7th, 1903, relating to the adoption of water meters by the village of Berwyn, which resolution as amended reads as follows: "Resolved by the president and the board of trustees of the village of Berwyn that the Crown rotary piston water meter with straight reading register or any other water meter constructed upon like principles and of equal merit to the Crown rotary piston water meter, every other such water meter to be approved by the Committee on Fire and Water, be adopted for exclusive use in the village of Berwyn and that the time for furnishing the water taps in the village of Berwyn with water meters of the character herein specified be extended to the 1st day of October, 1903."

The answer denies that the board of trustees on the 20th day of August, 1903, adopted the resolution set out in the bill as adopted on that day; it avers that each of said complainants caused to be installed the respective water meters after they were advised of the requirements of said ordinance of the 26th day of March, 1903, and after each of said complainants knew that the installation of the water meters so installed by them was in violation of said ordinance, and avers that neither the Worthington water meter nor the Trident water meter is or was when installed in any of the premises of said complainants a rotary piston water meter, nor were they provided with a straight reading register; nor were they of the character specified in the resolution of the 21st of May, 1903, nor was any of them ever approved by the Committee on Fire and Water of said village, but that each of said complainants in causing said water meters to be installed in his premises acted deliberately and willfully in violation of the ordinance.

The answer denies that the water meters installed by the complainants measured the water as correctly or economically as said Crown water meters, and avers that excluding the meters installed by the complainants there are only five Worthington water meters in use in the village, which were installed long prior to the adoption of said ordinance and that as said water meters were installed lawfully defendants suffered them to remain in use.

The answer avers that the exclusive use of one kind of water meters throughout an entire system is necessary to secure the best results and the greatest good to the supplier and consumers of water, because they secure a uniformity in the measurement of water used and uniformity of charge for all water used, no water meters being absolutely accurate and all undermeasure the water passing through them; that the exclusive use of one kind of water meters re-

Anderson v. Village of Berwyn.

sults in securing a minimum cost for the meters furnished and the greatest cheapness and expedition in making repairs of water meters, and assigns reasons therefor; that such exclusive use results in a saving of time and expense in reading meters and it secures better terms as to the price and better care and attention from the parties supplying the meters; that it is almost the unanimous opinion of persons engaged in operating waterworks that but one kind of water meter should be employed in a water system.

The answer avers that it is usual and customary for municipalities operating waterworks to require water takers to use meters to measure the water taken and also to require a particular kind or kinds of water meters to be used.

The answer is supported by the affidavits of the defendants, which tend to support the averments of the answer.

The complainants filed a replication to the bill. The case came on for hearing upon a motion of the complainants for an injunction according to the prayer of the bill, upon the bill of complaint and the amendment thereto, and the answer of the defendants to the bill and the amended bill and the affidavits filed in support of the bill and answers. The court denied the motion for an injunction and dismissed the bill for want of equity.

JAMES MCCARTNEY, for appellants; PHILIP J. McGUIRE, of counsel

FRANK B. PEASE and JAMES E. MUNROE, for appellees.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The parties to this controversy seem to have treated the hearing on the motion for an injunction as a final hearing of the cause, and they so treat it on this ap-

peal. In the absence of any objection, we will so treat it.

Appellants by their bill attack the validity of the ordinance and resolutions set out therein. The answers and affidavits of appellees bring to the attention of the court the amended resolutions and considerations of fact relating to the propriety of the exercise of the powers claimed to be conferred upon the village trustees by the provisions of chapter 24 of the Revised Statutes under which the village or Berwyn is incorporated. In order to determine the question whether or not the village board exceeded its powers in adopting the ordinance in question it is necessary to resort to the statutes which confer the powers upon incorporated villages.

Section 1 of article X of the above chapter provides that "The city council or board of trustees shall have power to provide for a supply of water by the boring and sinking of artesian wells, or by the construction and regulation of wells, pumps, cisterns, reservoirs or waterworks * * * ; also to prevent the unnecessary waste of water."

Section 3 of the same article provides that "the city council or board of trustees shall have power to make all needful rules and regulations concerning the use of water supplied by the waterworks of such city or village, and to do all acts and make such rules and regulations for the construction, completion, management or control of the waterworks, and for the levying and collecting of any water taxes, rates or assessments, as the said city council or board of trustees may deem necessary or expedient."

By section 4 of an act entitled "An Act authorizing cities, incorporated towns and villages to construct and maintain waterworks, approved and in force April 15, 1873" (Hurd's Statutes of 1901, page 323), it is provided: "The common council of such cities, or trustees of such towns or villages, shall have power to

make and enforce all needful rules and regulations in the erection, construction and management of such waterworks, and for the use of water supplied by the same. And such cities, towns and villages shall have the right and power to tax, assess and collect from the inhabitants thereof such tax, rent or rates for the use and benefit of water used or supplied to them by such waterworks as the common council or board of trustees shall deem just and expedient."

We do not doubt that the village of Berwyn has the power under the above provisions to adopt the ordinance in question. The provisions of the ordinance are clearly within the powers delegated by the express provisions of the statute. A grant of power to provide a supply of water and to prevent its waste, and to make all needful rules and regulations concerning the use of water supplied by the village and to make such rules and regulations for the management or control of the waterworks, and for the levying and collecting of water rates as the board of trustees may deem necessary or expedient is sufficiently broad and comprehensive to cover every provision of the ordinance to which our attention has been directed. Wagner v. Rock Island, 146 Ill. 139; Prindiville v. Jackson, 79 Ill. 337. A municipal corporation clothed with the powers conferred by the statutes above referred to, may require persons taking water from the public waterworks to furnish and pay for water meters to measure the water taken by them. State v. Gosnell, 116 Wis. 606; Wagner v. Rock Island, *supra.*

The ordinance adopts the meter system for measuring the quantity of water consumed or taken by the owners of property as the basis of charging for the water and fixes the rates to be charged therefor. It also provides that the kind of water meters to be used shall be designated by a resolution of the board of trustees. It is contended by appellants that if the right exists in the municipality to designate the kind

of meter which shall be purchased and used by the resident who takes water from the public supply, such right can only be exercised by the passage of an ordinance because it is a legislative act; and therefore that any attempt to select the kind of water meter by a resolution is void.

With this contention we cannot agree. It is doubtless sound as a legal proposition that a municipality can legislate only through the passage of ordinances; that acts of legislation by a municipality which prescribe a permanent rule of conduct or government should be established by ordinance. But, in the case at bar, the act of legislation, if it can be so termed, expressing the general policy or rule of conduct regarding the taking of water by consumers was done in and by the ordinance. The execution of the ordinance in the selection of the meters was reserved for further action by the board, and in other respects its execution was committed to the executive officers of the village. This, we think, was entirely within well-recognized legal principles. The ordinance is not subject to the objection that it delegates to administrative officers power which is legislative in nature or character. Nor is the amended resolution selecting the kind of meters subject to the objection that it is legislative in its nature. The resolution was rather executive and was a reasonable step in the execution of the ordinance. As said in Arms v. Ayer, 192 Ill. 601, quoting from Sutherland on Statutory Construction, sec. 68: "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." See also Owners of Land v. People, 113 Ill. 296; People v. Reynolds, 5 Gilm. 1.

We have seen that the adoption of the ordinance in

question is within the general powers of the village. The remaining test is whether the regulations sought to be enforced by the ordinance are reasonable or otherwise.

The answer filed by the defendants and the affidavits in support thereof show many reasons for the action of the village board in adopting the ordinance, and for the resolution passed on August 20, 1903, amending the resolutions of May 21, 1903. Upon the evidence thus presented to the court we think the court below did not err in holding that the ordinance was a reasonable regulation under the powers conferred.

We do not think a case is made by appellants entitling them to the injunction prayed for. No case of irreparable injury or injustice is made out. It does not appear but that appellants could have avoided the trifling losses which they will sustain by the enforcement of the ordinance. The bill does not disclose the time or times when appellants installed in their residences or places of business their water meters. It does not appear what complainants' water meters cost. The bill does not show that these meters were tested and approved by the proper village officers before they were installed. The bill makes no attempt to show compliance with the requirements of the ordinance or any other village regulations. For aught that appears in the bill, it may be that complainants had notice of the requirements of the ordinance and of the resolution of May 21, 1903, as amended, prescribing the kind of water meters to be used, before they procured their meters, and by the ordinary rules of construing pleadings these questions must be resolved against complainants. We see no reasonable ground for a court of equity to interfere in the affairs of the village upon the facts appearing in the pleadings and proofs.

The decree of the Superior Court is affirmed.

*Affirmed.*