LEWIS F. COOPER V. THE CITY OF GOODLAND *et al.*

No. 15,973.

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Water-works—Control and Maintenance.* Under the provisions of chapter 135 of the Laws of 1907 power is delegated to cities of the second class to make, by ordinance, any necessary and reasonable regulation for the control, operation and maintenance of water-works plants supplying the inhabitants of the city, provided such regulation be not in derogation of the laws of the state nor subversive of the property rights of the inhabitants.

2. ———— *Ordinance Requiring Consumer to Furnish Water-meter Held Reasonable.* An ordinance of a city of the second class owning and operating water-works to supply its inhabitants with water which prohibits consumers from taking from its mains any water except such as shall have been measured by means of a water-meter, and which provides that meters of the kind and make ordered by the mayor and council shall be furnished and the expense thereof be borne by the consumers severally, also reserving to the city the right to stop the supply of water for a violation of the regulations, is not unreasonable, but is valid.

Error from Sherman district court; CHARLES W. SMITH, judge. Opinion filed May 8, 1909. Affirmed.

*C. C. Perdieu,* and *John Hartzler,* for the plaintiff in error.

*E. F. Murphy,* for the defendants in error.

The opinion of the court was delivered by

SMITH, J.: The city of Goodland is a city of the second class and as such for some time previous to the commencement of this suit had owned, operated and maintained a system of water-works and had thereby supplied the inhabitants of the city with water. It seems that the city had been supplying water to the users thereof without any means of measuring the amounts used, and in January, 1908, the mayor and council of the city duly passed and published an ordinance pro-

viding, among other things, that on and after April 1, 1908, no consumer of water from the city water-works should take from the mains thereof any water except such as should be measured by means of a water-meter connected with the pipe of the consumer and of the kind and make ordered by the mayor and council of the city for the purpose; that all the expense of connecting and establishing the meter, with a box or other receptacle for the same, should be borne by the consumer, and when the same was done and furnished by the city the price thereof would be seventeen dollars. By the ordinance the city reserved the right to shut off the supply of water to a consumer for any violation of the rules governing the use of water in the city.

Shortly prior to April 1, 1908, Lewis F. Cooper filed in the district court of the county his verified petition, setting forth the facts, with a copy of the ordinance attached as an exhibit, in which petition he prayed for an injunction against the city to restrain it from installing a water-meter upon his premises at his expense, and also from shutting off the water and excluding him from the use thereof, and praying that the ordinance be declared unconstitutional, null and void.

Thereafter the plaintiff also filed his motion for a temporary injunction, supported by affidavits, stating that the city was installing water-meters on the premises of consumers and threatening to shut off the water from consumers that had no meters.

Notice of the hearing of the motion, and that the same would be heard upon the petition and affidavits filed, was duly served upon the attorney of record for the city, and the application for a temporary injunction was heard in accordance with such notice and was by the court refused. The plaintiff prosecutes error.

The attorney for the city moves to dismiss the case on the ground that the evidence heard on the application for a temporary injunction was not made a part of the record by a bill of exceptions, and hence has no

place in the transcript of the record upon which the case is brought here. Technically, under the common law, depositions or affidavits used in evidence did not become a part of the record until made so in a bill of exceptions. It was, in substance, said in *Miller v. Tobin,* 18 Fed. 609, that while at common law depositions were not included in the record unless made a part thereof by a bill of exceptions, yet depositions which were used in evidence and filed in the case should be considered as a part of the record and taken up as a part of the transcript of the record upon the removal of a cause from a state court to the federal court. We have a statute providing for the identification and correction of evidence taken by stenographers in court and making the same a part of the record without including the same in a bill of exceptions. And where evidence is reduced to the form of an affidavit, and notice of the filing thereof is given and acknowledged before the hearing, and the same is used as evidence on the hearing, it would seem that no good purpose is subserved by requiring a bill of exceptions, but the evidence, being in writing and filed and thus fully identified, may be included in a transcript of the record.

However this may be, the affidavits appear to be only cumulative evidence of the facts alleged in the verified petition, and if they were excluded from consideration it would not necessitate the dismissal of the case. It would not then appear that the motion of the plaintiff was entirely unsupported by evidence. The verified petition is evidence of equal standing with the affidavit upon such hearing. The motion to dismiss is denied.

It is contended by the plaintiff that a water-meter used in connection with a water-works system is for the benefit of the owner of the water-works, and is a part of the system, an instrumentality for measuring and delivering the water, and should be installed and paid for by the owner of the system.

Chapter 135 of the Laws of 1907 provides for the acquirement and ownership of water-works by cities of the first and second class, and authorizes the mayor and council of such cities to enact ordinances necessary for the control, operation and maintenance of such water-works located in such cities. It is conceded that the only restriction upon the power to pass such ordinances is that they must conform to the laws of the state and be reasonable.

Provisions are made in the ordinance in question making the charges for furnishing water and incidentals a lien upon the real estate and for the collection thereof as other taxes are collected. These provisions may be invalid, but the question is not involved herein. Practically the only question we have to determine is whether or not the ordinance is reasonable in that it requires the consumer to furnish a meter and meter-box of the kind and description ordered by the mayor and council of the city.

It was said in *Water Works v. San Francisco,* 82 Cal. 286, that the expense of such meters can not be imposed upon the consumer. In that case the question arose between a water-works company, presumably organized and conducted for profit, and the city and the board of supervisors, under an ordinance requiring the water company to furnish meters to consumers who made request therefor. The ordinance also provided that the company should collect only for the water furnished at meter rates, which were different from the house rates. One of the questions involved in the case was whether this provision of the ordinance was valid. It was held valid, and that the expense of the meters could not be imposed upon the consumers.

Other cases are cited in which it is held, as between water companies organized and conducted for profit and consumers of the water furnished by them, that a meter for the measurement of water is for the benefit of the water company and an instrumentality for de-

livering the water, and that the cost of such meters should be borne by such companies.

The case most nearly in point, however, is *Albert v. Davis,* 49 Neb. 579. By the statute of Nebraska the city was authorized to construct or acquire water-works and appoint a water commissioner, and it further provided that "it shall be the duty of such water commissioner, subject to the supervision of the mayor and council or board of trustees, to have the general management and control of the system of water-works in the city or village, fixing the rates to be paid by the inhabitants thereof within such limits as may be prescribed by ordinance for the use of water, water-meters, and hydrants." (Page 581.) The court held that inasmuch as the franchise authorized the city neither to sell meters nor to compel consumers to supply themselves with meters, but did authorize the city to collect rent for meters, it was implied that the city should furnish the meters and collect rent therefor but could not compel consumers to furnish their own meters. The court in that case expressly declined to express an opinion as to whether, in the absence of authority to rent water-meters, the city would be authorized by ordinance to require that meters should be furnished by consumers, but based its decision solely upon the provision authorizing the city to rent meters.

The statute of Kansas, *supra,* makes no provision for the renting of water-meters or the supplying or ownership thereof, but in the broadest terms authorizes the mayor and council of cities to which the act applies to enact ordinances necessary for the control, operation and maintenance of such water-works located in such cities.

The inhabitants of the city of Goodland have, through their mayor and council, and under the statutory franchise, acquired a system of water-works and are supplying themselves with water. It is evident that the only fair basis of fixing the amount which the individual

consumer should contribute for the benefit individually received is by measuring the water he gets. The water-meter is the instrument for this purpose, and the question is whether it is reasonable to require each con-sumer of water to pay for his individual meter instead of all the taxpayers of the city paying for all the meters used. As is commonly the case, it may be that in Good-land some of the taxpayers of the city are not so lo-cated that they can, and do not in fact, use water from the public water-works. If this be true, it seems very reasonable that they should be relieved of any contribu-tion to pay for the meters of those who do use the water, and that the consumers of water should pay for the meters of which they alone as individuals get the benefit.

The only question remaining, then, is whether the grant of power from the legislature to the city is suffi-ciently broad to authorize this provision of the ordi-nance. The court found, and we believe correctly, that the provision made by the ordinance is reasonable and fairly included in the grant of power. No inhabitant of the city is required to use water furnished by the city, or to buy of the city or otherwise to furnish a water-meter. But if one desires to use the city water he must furnish or pay for a meter to measure the quantity he may receive. The city has the right to have the meas-urement uniform, and for this reason and to avoid mis-takes of its employees may require all meters to be of one kind and make. Whether the city is authorized to buy and sell meters is not involved in this case. Pre-sumably a large number could be bought at a less price for each meter than one could be had singly, and per-haps for this reason the plaintiff did not ask to have the city enjoined from doing the business.

The order of the court refusing the temporary in-junction is therefore affirmed.