## FARKAS *v.* CITY OF ALBANY *et al.*

1. Under the power contained in the charter of the City of Albany (Acts 1912, pp. 515, 542, 559), the board of water, gas, and electric-light commissioners had authority to install, on the sidewalk in front of the premises of a property owner, a water-meter through which he could take water, to require him to pay the cost thereof, and to have the water cut off upon his refusal to pay.

2. The regulation was not unconstitutional on the ground that the water-works were constructed with the proceeds of bonds authorized by an election for the purpose of constructing such a system owned entirely by the city, and that to require the consumer to pay for the meter would cause the waterworks to be owned partly by the city and partly by the consumer.

3. This regulation did not impair the obligation of any contract between the city and the property owners, arising from the way in which the waterworks were constructed and paid for, and from the long-continued practice in furnishing water without requiring a meter at the expense of the property holder.

4. It can not be declared that the regulation was unreasonable.

5. The other grounds of attack on the regulation or the requirement that a meter shall be installed at the expense of the owner of the premises to be served were without merit.

JUNE 13, 1914.

Petition for injunction. Before Judge Cox. Dougherty superior court. March 24, 1914.

The board of water, gas, and electric-light commissioners of the City of Albany, claiming authority under the charter, adopted a rule providing that no water should be furnished on any premises except through a meter furnished and installed at cost by the city on the sidewalk in front of the premises, and providing that water should be cut off from the premises for a violation of the rule. Meters were installed and connected with the premises of Sam Farkas, who owned a number of lots in the City of Albany. He refused to pay for the meters, and filed an equitable petition, seeking to enjoin the city and the board of commissioners from cutting off the water. The injunction was refused, and he excepted. The remaining facts, so far as necessary, will be found in the opinion.

*Pope & Bennet,* for plaintiff. *J. T. Mann,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1. Where a municipal corporation owns and maintains water-works, it may, under proper legislative authority in its charter, require that consumers shall, at their own expense, provide meters;

53

or, if the charter so authorizes, it may install the meters at the expense of the consumers. This is supported by what we consider the better reasoned cases. State *v.* Gosnell, 116 Wis. 606 (93 N. W. 542, 61 L. R. A. 33) ; Cooper *v.* Goodland, 80 Kans. 121 (102 Pac. 244, 23 L. R. A. (N. S.) 410) ; Mallon *v.* Board of Water Commissioners, 144 Mo. App. 104 (128 S. W. 764) ; Anderson *v.* Village of Berwyne, 135 Ill. App. 8; Sackett *v.* City of Morris, 149 Ill. App. 152; Powell *v.* City of Duluth, 91 Minn. 53 (97 N. W. 450) ; Dill. Mun. Corp. (5th ed.) § 1320; 3 Abb. Mun. Corp. § 893. In Mallon *v.* Board of Water Commissioners, supra, Ellison, J., thus aptly stated a reason for granting power to a city to select water-meters and install them in residences, at the expense of the consumer: "It is a matter of common knowledge that where water is supplied without limit, at a stated price, many consumers waste it. The knowledge that the quantity used will not affect the price begets indifference and encourages negligence. Nothing affords a better check on this fault of a large part of the human family than self interest. So, therefore, the installation of devices through which it may be known what quantity of water a person uses, and whereby he may be required to pay in proportion to the quantity, are considered to be reasonable regulations. The good effect of such regulations is double; it leads to the payment by each person for the quantity he consumes, and it protects the general supply."

While there may be some conflict in authority on the subject of the power of municipal corporations, or public-service corporations, to require the installation of water-meters at the expense of the consumers, it will be found to a large extent that this apparent conflict is based upon the construction of special statutes involved in different cases, under which the power was claimed. Thus, in Albert *v.* Davis, 49 Neb. 579 (68 N. W. 945), it was held that, under the statutes of that State, a city of the second class owning and maintaining waterworks did not have the power to require an inhabitant, as a condition precedent to the use of water, to purchase and place in position, at his own expense, a water-meter. The affirmative grant of power in the act then under consideration to fix and collect charges for the use of water-meters was deemed to exclude by implication the power to compel consumers to furnish their own meters. Irvine, C., said: "The authority of a municipal corporation in the premises, is, however, so purely a question of

statutory construction that the adjudications of foreign courts are practically of no assistance."

As to municipal corporations owning and maintaining waterworks, it has generally been assumed that the legislature could confer the authority to require the consumer to bear the expense of providing a meter; but the question has been, what had the legislature actually done in a given case? The language used in the discussions must be considered with reference to the point involved. Thus, rulings that waterworks companies, which have been granted a franchise to furnish citizens with water measured by the gallon, must generally provide the means of making the measurement, and similar cases, do not deny to a municipal corporation owning waterworks the right to require consumers to furnish meters at their own expense, if its charter so authorizes. We think it unnecessary to discuss the various cases of waterworks companies, and the legislative acts or contracts under which it was held that the duty of furnishing meters rested upon them.

The analogy sought to be drawn between a merchant who sells tea or coffee by the pound to purchasers, and who furnishes the scales with which to weigh the article sold, and a municipal corporation owning and maintaining waterworks, is at best imperfect. The merchant keeps his tea or coffee in his store or warehouse. One desiring to buy goes to him to obtain a specified number of pounds of the commodity. He can not obtain possession of any of it until the merchant has separated from the bulk that part which will go to the purchaser, and delivers the portion thus segregated. The means of separating the required amount from the general mass, and of ascertaining the quantity thus separated, are the scales or measuring implements. Naturally the seller furnishes the means of ascertaining the quantity which he wishes to be taken from his general stock and delivered to another. Unless required to do so by statute or valid ordinance, probably a seller of tea or coffee might require every purchaser to bring his own scales. No such demand would be likely to be made, because the customer only occasionally buys, while the seller continually sells. Thus the burden of furnishing the means of ascertaining the amount in selling would naturally fall upon the seller. If the merchant did not himself separate a certain quantity of his goods from the mass and deliver it to a buyer, but kept a large reservoir or bin, and allowed con-

sumers to take coffee, tea, or grain therefrom at their pleasure, it would not seem so unreasonable if he should require each person drawing on the general supply to provide some means of determining how much he took. But a municipal corporation owning waterworks provides, by means of a common fund, a quantity of water in its mains under proper pressure. The consumer is permitted to connect his premises by pipes with the general water-supply. The city is not present at all times, by itself or agents, to draw off and deliver to him a hundred or a thousand gallons of water. But he can simply open a faucet or tap and allow the water to run at will. The city has no means of knowing when he draws from the general supply, or how much, except by the requirement of a meter. The consumer takes the water whenever he likes, and in whatever quantity he likes. It is therefore not a great injustice if the city requires him to provide the means for measuring the amount taken by him, in such a manner as to reasonably protect itself and the general public against waste of the common water-supply, and against false measurements and false reports on the part of the consumer. This is accomplished by means of a meter. It may be that the dominant purpose of its installation is to protect the city. But it may also have a beneficial use to the consumer, in that he is only charged for the water which he consumes. We do not think, therefore, that the cases of gas companies and water companies operating under certain franchises or contracts, which are cited by counsel for the plaintiff in error, are controlling. But the real question is whether the City of Albany has charter power to have meters installed at the expense of the consumers.

The leading case cited by counsel for the plaintiff in error, which deals with a municipal corporation, is Red Star Steamship Co. *v.* Mayor and Aldermen of Jersey City, 45 N. J. L. 246. In that case a meter of an expensive character (costing $220) was installed on certain premises, which were subsequently leased to a company. The board of public works of the city sought to compel the lessee to pay for the meter, under penalty of having the water shut off. It was held, that, under the acts of the New Jersey legislature on the subject, the general purpose was to require all the expenses of laying the water-pipes, distributing water, and adjusting the price or rent to be borne by the city, and that a rental fixed for the use or advantage of the water was all that was required of a citizen who

had the benefit. We are not prepared to endorse all that was said in the discussion of the case; but the facts and the legislative act under consideration were quite different from those now before us.

Only one case has been brought to our attention in which a constitutional objection was raised to a provision of this character in a charter. In Swanberg v. City of New York, 123 App. Div. 774 (108 N. Y. Supp. 364), the provision of the charter of New York which authorized the commissioners of the water-supply, in their discretion, to place meters on the premises of the consumers at their expense, was attacked as unconstitutional, as being a taking of private property without due process of law. Woodward, J., thus dealt with that objection: "While it is true that the City of New York in delivering water to private individuals acts in a sense as a private corporation, yet the duty and obligation of the municipality to afford fire protection and to safeguard the public health, through a pure and wholesome supply of water, makes the maintenance of the water system more of the nature of a duty owing by a public or municipal corporation; and to say that it is not within the province of the State legislature, in authorizing the City of New York to construct and maintain a water-plant, to provide for placing meters upon the premises of those who are to use the water, on the theory that this is a taking of the property of the individual without due process of law, is carrying constitutional limitations to the limit of absurdity."

The charter of the City of Albany contains ample authority for the placing of meters at the expense of the consumers. Among other things, it is empowered "To own, use, and operate, for municipal purposes and for profit, a system of waterworks and electric lights and gas-works; to make rules and regulations regarding the use of the same by the public, and provide by ordinance for the punishment of those who illegally use said water, electricity, or gas, and who illegally divert same from their proper channels of transmission." By the charter a board of water, gas, and electric-light commissioners was created, and its powers defined. Among these were powers to establish a scale of water, gas, and electric-light rates, make and enforce rules for the collection of the same, adopt rules and regulations respecting the introduction of water, gas, and electricity into and upon any premises, and from time to time to regulate the use of water, gas, and electricity in such manner as

shall seem to them necessary and proper. It was declared that they "shall have the further power to furnish at cost, place, and compel the use of meters, and prescribe the kind, and make the use of same a condition precedent to furnishing premises with water, gas, or electricity, and to prescribe how and where such meters shall be placed." They were given authority to require payment in advance for water, gas, or electricity, and, in case payment was not promptly made, to shut off the water, gas, or electricity from the premises. Under these powers the board of commissioners adopted rules which provided, among other things, that no water should be furnished to any premises except through a meter; that all meters should be of the kind prescribed and furnished (at not exceeding cost, including installing) at the expense of the owner of the premises by the board of water, gas, and electric-light commissioners; that all meters should be installed on the sidewalk in front of the premises, and so maintained as to be free from being tampered with, but that the consumer or owner of the premises should always have access to the same for purposes of reading and inspecting. It was further provided that water should be immediately cut off from any premises on which any of the rules were violated, and should not be turned on again until such violation was remedied. Acts 1912, pp. 515, 542, 559.

The mere reading of the charter powers and the stating of the action of the board is sufficient to show that the latter was authorized by the former. If the charter authorized the municipal authorities, in their discretion, to charge a flat rate in advance, or to require the installation of meters, this would not render their action in adopting the latter course unlawful. When the legislature authorized the board of commissioners to install meters at cost, it is hardly conceivable that the lawmakers did not intend to authorize the board to require payment of the cost.

2. It was contended, that the waterworks were constructed with money arising from the sale of bonds issued under authority of an election held for that purpose; that the debt was created to construct waterworks to be owned wholly by the city; and that the ownership of meters by the consumers (which meters it was claimed formed a part of the waterworks) would be in conflict with the constitutional intent, and would result in waterworks owned partly by the municipality and partly by the consumer. This contention is

unfounded. It is not everything that may be connected with the mains of the city, as a mere means by which the consumer may obtain the use of water, or for measuring the amount consumed, which becomes an integral part of the public waterworks system. The pipes laid from the city's mains to different parts of the owner's premises may be his. He may attach them to closets, bathtubs, or other local means of use. He may attach faucets or cocks. But these things would not become a part of the waterworks system, so as to render the owner of them a joint owner of the waterworks with the city. They are accessories of use by the consumer; and under proper legislative authority, he may be required to pay for the meter located on the sidewalk in front of his premises, or, in default thereof, the water can be cut off.

3. Neither is there force in the contention that, by reason of the manner in which the waterworks were built and paid for with the proceeds of bonds issued for the purpose, a contract arose with the citizens, which was broken or impaired by requiring consumers to bear the expense of meters, and thus to become part owners of the system.

4. There is nothing in the regulation which would authorize a court to declare it invalid on the ground of unreasonableness. There is nothing to show that the meters installed were of any peculiar or improper character, or that this was done at an unnecessary or improper cost, or that there was any fraud or arbitrary conduct in the matter. The plaintiff owned a number of pieces of property in the city, some used for purposes of residence, and some for business purposes—the exact number does not appear. While it was alleged that the entire charge against him for installation of meters would amount to $765, and that it would cost all of the consumers several thousand dollars in the aggregate, this does not show any unreasonableness in the character of the meters installed or in the conduct of the board in regard to them. The general discussion contained in the first division of this opinion is applicable in considering this ground. Nor did placing the meters on the sidewalk (doubtless beneath the surface or so as not to interfere with use of the sidewalk for passage) so as to be accessible to both the city's agents and the consumer, instead of inside of the property line, make the requirement invalid as being unreasonable, or as taking private property for public use without compensation.

5. There was no merit in any of the other grounds on which the injunction was sought, and there was no error in refusing to grant the writ.     *Judgment affirmed. All the Justices concur.*