No. 12,736.

Hinderlider et al. *v.* Everett et al.

(19 P. [2d] 211)

Decided January 23, 1933.

Mr. John S. Underwood, Attorney General, Mr. Clarence L. Ireland, Attorney General, Mr. Oliver Dean, Assistant, for plaintiffs in error.

Mr. E. H. Stinemeyer, Mr. Wallace Schoolfield, for defendants in error.

160

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

OUR General Assembly in 1929 (S. L. 1929, p. 415), passed an act providing for the installation of self-registering devices for measuring the flow of water in the streams of the state and thereby amended previous statutes on the same subject enacted in 1921 and 1925. In section 1 of the 1929 Act it is provided that whenever, by reason of present or prospective litigation or adjustment respecting the diversion and use of the waters of any interstate stream, it may become advisable or necessary to make a comprehensive and detailed study and record of the flow of water in, or of diversions from, or of return of water to any part or section of such stream, upon the filing with the state engineer of a petition requesting such a study and record, signed by a majority of the owners of the decreed appropriations diverting water from any such section of such stream, the canal owners affected shall install and thereafter maintain and operate, at the owner's expense, self-registering automatic gage height recording instruments for the recording of diversions or return flow, when ordered so to do by the state engineer by notice for that purpose served upon such owner or owners. The section further provides that such self-registering devices may be removed at the conclusion of the period of such river study and by order of the state engineer. The section also provides, and it is the part of the statute which is material in the pending case, that the state engineer may also order the installation of such self-registering device upon any ditch, canal, flume, pipe line or other means used for diverting water from any natural stream, where he deems the same necessary for the proper distribution of water from such natural stream, or for the compilation of accurate records. Such self-registering device shall be in-

stalled at the expense of the owner when ordered so to do by the state engineer by notice for that purpose served upon him or upon the superintendent, headgate keeper or representative of such canal or means of diversion, either in person or by registered mail. Said instruments shall be installed within thirty days after the receipt of such notice as aforesaid. Provided, however, that the owner or owners or duly authorized representative of any such ditch, canal, flume, or pipe line, may request a review of such order by the state engineer if made to him in writing within the thirty-day limit hereinabove mentioned. Thereupon the state engineer shall fix a place and date for the hearing of the matters complained of. At such hearing the complainant or complainants may be represented in person or by counsel. The state engineer shall, as soon thereafter as practicable, enter his final ruling in the matter and so notify the complainant or complainants in writing. When in such ruling the state engineer shall sustain, in whole or in part, the order or orders so reviewed, such complainant or complainants, or any one or more of them, may appeal from such decision of the state engineer in so far as it affects him or them, to the district court for the county or counties, or one of them, wherein the dispute arose, by giving notice of such appeal to the state engineer within thirty days after the making of such decision, and executing a bond to the people of the state of Colorado, with sufficient security, to be approved by the clerk of said court, conditioned for the payment of all costs that shall be adjudged against appellant. In the event that such appeal is taken, the state engineer is required to file his decision and all papers in the case in his possession, with the clerk of said district court, and the appellant or appellants shall, within ten days after such notice shall have been served upon the state engineer, file a complaint as in other cases, in the district court, copy of which shall be served upon the state engineer, and answer shall be made as in other cases. Upon the failure of such com-

plainant or complainants to appeal from such decision of the state engineer, or in the event that the decision of the state engineer be sustained by the district court, the state engineer shall have power to require immediate compliance with his orders, and upon failure of the owner or owners or representatives of such owners to comply therewith, the state engineer may refuse to permit any water to be diverted by any such ditch, canal, flume or pipe line until such owner or owners or representatives of such owners shall have complied with the orders of the state engineer and the provisions of this act.

The state engineer, acting upon the authority which the 1929 statute above referred to conferred upon him, in January, 1930, ordered the plaintiffs in the action now under review—ranchmen who own lands and ditches located in water district No. 11 in this state, situate in Chaffee county, Colorado, whose water priorities were decreed to them in the pertinent statutory adjudication proceedings—to purchase, install and maintain in their respectve ditches the self-registering automatic gage height recording instruments hereinabove described, and in such order specified the kind of instrument to be installed, and demanded of them compliance with the other requirements of the state engineer's office as contemplated by the 1929 statute, such installation and maintenance thereof to be at their expense. The statute, and the notices of the state engineer, required compliance with such order within thirty days after the notice was served. The defendants in error, asserting their financial inability to comply with the order, and denying the right of the state engineer to impose upon them, for the benefit of all water users in water division No. 2, and for the benefit of his office, burdens not shared by any other property owners and water users of the same class and in the same water division, failed and refused to comply with the state engineer's orders and did not purchase or install such self-registering devices. No further action

on the part of the state engineer was taken in this matter until April 21, 1930, when he issued orders to the water commissioner of the water district to close the headgates of the ditches of designated owners of water priorities and to lock or nail the headgates by means of heavy nails so the same could not be readily opened, and to post on the headgates a notice to the effect that such headgates were closed by order of the state engineer under authority granted to him by chapter 116 of the Session Laws of 1929 above referred to, for failure to install an automatic water and recording instrument in accordance with his previous order of January 20, 1930. All persons were warned not to molest the headgates or remove the notice. The water commissioner obeyed the orders of the state engineer and closed the ditches as directed, thereby cutting off the water supply which the defendants in error claim to be indispensable for the preservation of their crops and livestock.

The statute in question, purporting to authorize such action on the part of the state engineer and water officials, it is claimed by the water owners affected, makes no provision for a hearing by the state engineer or his determination in such matters, and in this case no hearing or determination that the water owners were in default in the premises was made. These water owners, who are defendants in error in this action, acting under the advice of their attorneys, took the position that the General Assembly may not, under the provisions of our Constitution, authorize a state executive officer like the state engineer, to impose upon them, for the common or general benefit, financial burdens not shared by others similarly situated, and asserting that, even if it were competent for the General Assembly to give an executive officer discriminatory powers of this character, still it was and is impossible to vest in him authority to deprive them of their property without due process of law, thereupon commenced the present independent action, as plaintiffs in the district court of Chaffee county, to pre-

vent the closing of their ditches for the reasons specified in the notice signed by the state engineer and posted at the headgates of the respective ditches.

Considering the importance of the questions involved, we have deemed it helpful, if not necessary, at considerable length thus to set forth the statutory provisions involved and the respective claims of the parties. The pleadings consist of the complaint of the plaintiffs, water owners; the general demurrer of the state engineer and subordinate water officials thereto; the answer, amended answer and cross-complaint, and the general demurrer of the plaintiffs to the cross-complaint. The trial court overruled the water officials' demurrer to the complaint, sustained the water owners' demurrer to the defendants' cross-complaint, in which the facts as above recited are set forth at length, and entered a decree perpetually restraining and enjoining the defendants from shutting down the plaintiffs' headgates to enforce the state engineer's orders for the installation of the automatic self-registering devices in the plaintiffs' ditches. Following such rulings the plaintiffs declined to introduce any evidence and the defendants moved for dismissal of the complaint and judgment in their favor, which was denied. The defendants elected to stand upon their demurrer to the complaint, and upon their own answer and cross-complaint. The final decree of the trial court, which, in substance and effect, held the provisions of the statute in question unconstitutional and void, is now before us for review at the instance of the state officers.

The defendants in error here, the water owners, concede that the state engineer took the action, which gave rise to this litigation, under the authority supposed to have been conferred upon him by the 1929 Act. They say that the only difference between the 1929 Act and the former statutes upon the same subject is the addition to the latter of a provision for the making of a protest against any order of the state engineer requiring the installation of these devices, and the pretended privilege

of appealing to the district court, if such protests should be overruled.

In our view of this controversy, the controlling question for decision is as to the constitutionality of the 1929 Act. If the act is constitutional, and if it is not subject to the other minor objections urged against it by learned counsel for the water owners, the decision of the district court below is wrong. The substance of the entire argument of counsel for the water owners is that this statute and proceedings thereunder by the state engineer, if sustained, would operate to deprive them of their property rights without due process of law. First, however, we dispose of the additional minor grounds urged by the water owners for upholding the final decree of the district court.

They say that their ditches are already sufficiently equipped with headgates and rating flumes for the regulation and control of the measurement of water, and that the engineer's orders will require the expenditure of large sums of money and impose upon plaintiffs, for the use and benefit of others who are not subject to the same requirements, financial burdens which the plaintiffs cannot afford to take. The fact, if it be a fact, that the plaintiffs' ditches are equipped with self-registering and proper rating flumes is no ground for holding the statute in question invalid, which is plaintiffs' chief reliance. The contention that the engineer's order would entail unnecessary expenditures are merely conclusions of the pleaders. The mere fact that when the orders were made the earth and water at the headgates of plaintiffs' ditches were frozen so as to render it impossible without unreasonable expense to install the devices, was a matter that the water owners, had they desired to do so, could have had arranged with the state engineer, but no such attempt was made.

The sole and controlling question for decision in the case in our view, as already stated, is whether the statute in question deprives the water owners of their

property rights without due process of law. We think the Act of 1929 is not void for any of the reasons asserted against it. It does not deprive water owners of property rights without due process of law. The Supreme Court of the United States in the case of *Buttfield v. Stranahan,* 192 U. S. 470, 24 Sup. Ct. 349, in a lucid opinion by Mr. Justice White, said that where a statute acts on a subject as far as practicable and only leaves to executive officials the duty of bringing about the result pointed out, and provided for, it is not unconstitutional as vesting executive officers with legislative powers. And he further said, page 492: "In examining the statute in order to determine its constitutionality we must be guided by the well-settled rule that every intendment is in favor of its validity. It must be presumed to be constitutional, unless its repugnancy to the Constitution clearly appears." Congress had passed an act to establish standards and to provide, from considerations of public policy, that no rights shall exist to import designated articles of food and drink not equal thereto. By this act Congress provided that it shall be unlawful for any person or persons or corporation to import or bring into the United States any article, such as tea, which is inferior in purity, quality and fitness for consumption to the standards provided in the act itself, and the importation of all such merchandise is prohibited. It was said there that the establishment of and enforcement by executive officers of the statutory standard qualities does not constitute a deprivation of property without due process of law.

In *Reetz v. Michigan,* 188 U. S. 505, 23 Sup. Ct. 390, in an opinion by Mr. Justice Brewer, it was held, among other things, that due process of law is not necessarily judicial process, and in the opinion was quoted from another case the following: "The objection that the statute attempts to confer judicial power on the board [of registration] is not well founded. Many executive officers, even those who are spoken of as purely ministerial

officers, act judicially in the determination of facts in the performance of their official duties; and in so doing they do not exercise 'judicial power,' as that phrase is commonly used, and as it is used in the organic act, in conferring judicial power upon specified courts. The powers conferred on the board of medical examiners are nowise different in character in this respect from those exercised by the examiners of candidates to teach in our public schools, or by tax assessors or boards of equalization in determining, for purposes of taxation, the value of property.'' And Mr. Justice Brewer cites in the opinion a quotation from Mr. Justice Matthews, in *Hurtado v. California*, 110 U. S. 516, the following words: '' 'It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law'.''

In *Cooper v. Goodland*, 80 Kan. 121, 102 Pac. 244, the court had under consideration the provisions of a statute of Kansas which delegated to cities of the second class authority to make, by ordinance, any necessary and reasonable regulation for the control, operation and maintenance of waterworks plants supplying the inhabitants of the city. The court there held that such an ordinance of a city of the second class owning and operating waterworks to supply its inhabitants with water, which prohibits consumers from taking from its mains any water except such as shall have been measured by means of a water meter, and which provides that meters of the kind and make ordered by the mayor and council shall be furnished and the expense thereof be borne by the consumers severally is not unreasonable but, on the contrary, is a valid regulation.

In *Shaw Stocking Co. v. Lowell*, 199 Mass. 118, 85 N. E. 90, it was held that a regulation made by the water officials of the city requiring the measurement of water

from the city waterworks used in such system and the installation by the city, at the owners' expense, of meters to be used for such purpose, is valid. In *Farkas v. Albany*, 141 Ga. 833, 82 S. E. 144, L. R. A. 1915A, p. 320, in an opinion by Mr. Justice Lumpkin, will be found a valuable discussion by that able judge upon due process of law which, while not directly applicable to the facts of this case, is in line with our conclusion that the statute now before us is a valid statute.

But if we should be in error in the foregoing discussion as to due process of law, still our statute itself specifically grants to plaintiffs due process of law. At the risk of repetition it is well to say that where, as by this statute, the state engineer orders such self-registering devices to be installed at the expense of ditch owners, the latter may request a review of such order, if application therefor is made within a period of thirty days; whereupon the engineer must fix the place and date for the hearing of the matters and things complained of. At such hearing the complainant may be represented in person or by counsel. The engineer, as soon thereafter as practicable, is required to make his final ruling in the matter and give notice thereof to the complainant in writing. If the ruling of the engineer is adverse to the complainant, the latter may appeal from his decision to the district court of the county wherein the dispute arose by giving notice of an appeal to that officer within thirty days after the latter makes his decision, and executing a bond conditioned for the payment of costs that may be adjudged against the appealing party. If such appeal is taken the state engineer shall file his decision and all papers in the case with the clerk of the district court. An opportunity is thus afforded to the complaining party to be heard and after the issues are made up the court proceeds to act upon the matter in dispute. If such statutory provisions do not constitute due process of law and afford the complaining water owner an opportunity to have his rights, affected by this

statute, determined by a judicial tribunal, we are wholly unable to understand the English language. The following, among other authorities that sustain our conclusion, are: *Locke's Appeal*, 72 Pa. St. 491, 498, 499; 40 Cyc. 794-796; 27 R. C. L., p. 1412; Mott on Due Process of Law, p. 562; *Sapero v. State Board*, 90 Colo. 568, 573, 11 P. (2d) 555; Cooley on Constitutional Limitations (8th Ed.), p. 228, et seq.; *Board Com'rs Pueblo County v. Smith*, 22 Colo. 534, 541, 45 Pac. 357; 1 Bouvier's Law Dictionary, p. 820; *Field v. Clark*, 143 U. S. 649, 694, 12 Sup. Ct. 495; *Colorado etc. Co. v. Railroad Com.*, 54 Colo. 64, 84, 129 Pac. 506.

For each and all of the reasons above given the judgment of the district court is wrong and it is hereby reversed and the cause is remanded to the district court. Further proceedings therein must be consistent with the views expressed in this opinion.

MR. JUSTICE BOUCK not participating.