## SIERRA PAC. POWER CO. v. CITY OF RENO et al.

### No. C–29.

District Court, D. Nevada.

June 28, 1940.

Thatcher & Woodburn, of Reno, Nev., for plaintiff.

Douglas Busey, City Atty., and George Springmeyer, both of Reno, Nev., for defendant.

NORCROSS, District Judge.

This suit was tried and submitted upon a supplemental complaint and answer thereto, filed subsequent to the decision of this court and, upon the appeal therefrom, the decision of the Circuit Court of Appeals, 9 Cir., 44 F.2d 281.

The supplemental complaint is based on the alleged unconstitutionality of a subsequent amendment to the State Public Utility Act, Comp.Laws Nev. § 6112, reading as follows: "provided, that it shall be unlawful for any public utility, for any purpose or object whatever, in any city or town containing more than four thousand five hundred inhabitants, to install, operate or use, within such city or town, any mechanical water meter, or similar mechanical device, to measure the quantity of water delivered to water users; * * *."

Plaintiff is a public utility, and it and its predecessors have, since December, 1874, been engaged in supplying water to the inhabitants of the town, now city, of Reno for domestic and other purposes. During that period of time the population, so supplied, has gradually increased from about two thousand to about twenty-one thousand.

It is contended that the meter system is the most accurate method of determining the amount of water consumed by patrons of the utility and whether waste is permitted by any particular patron or patrons. It is not contended, however, that the plaintiff is not now possessed of any ample supply of water and that the system of determining rates does not provide an adequate revenue.

The answer to the supplemental complaint alleges the amendment of the statute in question to be "a reasonable and necessary police regulation * * * for the general welfare of the people of the State of Nevada in that said regulations are necessary for the preservation of the trees, shrubbery, lawns and other vegetation in the naturally dry and arid regions of the State of Nevada, in which the City of Reno is located; that if the water meters and measuring devices * * * are installed

and maintained by plaintiff many water consumers in the City of Reno will use an insufficient quantity of water for the irrigation of said trees, shrubbery, lawns and vegetation with the result that much of said verdure will suffer and die, to the detriment of the people of the State of Nevada and against their general welfare."

On behalf of plaintiff it is urged that the meter "is the only efficient method yet devised for accurately measuring the quantity of water service." Counsel quote from Pond on Public Utilities, 700, reading: " 'A public utility is bound to serve any member of the public who makes proper application for service in accordance with reasonable rules and regulations. The meter is the most efficient method yet devised for accurately measuring the quantity of such service. The meter prevents extravagant use or needless waste of such service, which frequently occurs when the flat rate method is employed for determining the amount due for the service.' "

From quotations from authorities cited on behalf of plaintiff the following is taken from Farkas v. City of Albany, 141 Ga. 833, 82 S.E. 144, 145, L.R.A.1915A, 320, Ann. Cas.1915C, 1195: "In Mallon v. Water Commissioners, supra [144 Mo.App. 104, 128 S.W. 764], Ellison, J., thus aptly stated a reason for granting power to a city to select water meters and install them in residences, at the expense of the consumer: 'It is a matter of common knowledge that where water is supplied without limit, at a stated price, many consumers waste it. The knowledge that the quantity used will not affect the price begets indifference and encourages negligence. Nothing affords a better check on this fault of a large part of the human family than self-interest. So, therefore, the installation of devices through which it may be known what quantity of water a person uses, and whereby he may be required to pay in proportion to the quantity, are considered to be reasonable regulations. The good effect of such regulation is double; it leads to the payment by each person for the quantity he consumes, and it protects the general supply.' "

While it may be conceded that the use of meters may have the effect of reducing the amount of water used by the inhabitants of the City of Reno and thus protecting the plaintiff's rights of appropriation of a portion of the waters of the stream system, it does not follow that the situation here presented is similar to that where the water used continues to perform no useful and valuable service after city uses are supplied. While, as said in the Albany case, supra, "a large part of the human family" is subject to the "fault" that "knowledge that the quantity used will not affect the price begets indifference and encourages negligence" and that the meter, as a measure of water consumed, affords a´ check on this fault by reason of "self interest." What in effect is contended to be the basis of the statute here in question is that the self interest of water consumers in a city in the arid region where water must be used for irrigation as well as domestic purposes will, if meters are permitted as a measuring device, cause a curtailment in the use of water for irrigation purposes which will seriously affect the public interest.

The City of Reno, now having a population in excess of twenty thousand, is not in any large sense a manufacturing city. It comes within a limited class of cities regarded in the main as home or residential cities. Here is located the State University. Its public school system and facilities therefor are among the best. In the residential section is found attractive homes surrounded by lawns, shrubbery and flowers. The streets generally are lined with beautiful trees. Federal, state, county and city public buildings are usually supplied with lawns and trees and the city maintains a number of parks with trees, shrubbery, lawns and flowers, all requiring irrigation. All this situation affords an attraction to the homeseeker. As the city has grown in size it has extended into the farming area. Water theretofore used for the irrigation of such area continues to be available for a similar purpose.

Attention is also called to an expression in the opinion of Judge Farrington of this Court in the case of Reno Power, Light & Water Company v. Public Service Commission, 300 F. 645, at page 650, reading: " * * * about 4 cubic feet per second is wasted in some 450 toilets through which water is permitted to flow constantly. For this waste the users of such toilets are primarily responsible, but the initiative in stopping the waste is probably with the company. The flow of water beneficially used by the people of Reno and Sparks thus averages about 10 cubic feet per second."

In the case last above mentioned, decided in the year 1920, this court was dealing with the question of the enforcement of a

schedule of rates and charges for water in pursuance of an order made by the Public Service Commission of Nevada. The use of the expression "waste" therein has relation to the plaintiff company's rights in respect to water supply. The case now before the court presents a different question in respect to the use of the term "waste" than that considered in the foregoing citations. The Truckee River System is not only the source of supply of water for the inhabitants of the City of Reno and the adjacent City of Sparks but, also, the source of supply of water for irrigation of Truckee Meadows, the valley surrounding the city, irrigable lands along the river to the east of the valley, inclusive of the Pyramid Lake Indian Reservation and the Government Reclamation Project near Fallon in Churchill County, approximately sixty miles easterly of Reno. The Truckee River flows through approximately the center of the City of Reno.

Practically all of the water used by the inhabitants of the City of Reno except for the purpose of irrigation is, shortly after use, by means of sewerage, returned to the Truckee River and becomes available in supplying the needs for irrigation at various points down the course of the river. Water used for irrigation of lawns, trees, shrubbery and flowers, excepting that portion absorbed by plant consumption or lost by evaporation, also, finds its way through seepage back into the river. It is estimated that about fifty per cent of the water so used is returned to the river.

There exists, therefore, a different state of facts and situation to deal with than considered in the authorities cited by plaintiff. Pacific Live Stock Co. v. Read, 9 Cir., 5 F.2d 466. Where such a situation exists the rule stated by the Supreme Court in Cohens v. Virginia, 6 Wheat. 264, 399, 19 U.S. 264 399, 5 L.Ed. 257, becomes applicable.

The prayer of plaintiff's complaint, for the reasons stated, is denied without prejudice to any rights which in the future may exist by reason of any change in conditions. Defendants are granted judgment for costs