## PACIFIC LIVE STOCK CO. v. READ.

(Circuit Court of Appeals, Ninth Circuit. May 11, 1925.)

No. 4425.

**1. Evidence ⬅10(1)—Need of water for irrigation purposes in western part of United States judicially known.**

The Circuit Court of Appeals for the Ninth Circuit judicially knows that water in many sections of the western part of the United States is their very lifeblood.

**2. Waters and water courses ⬅24—Appropriation will not permit waste.**

Court will not permit any appropriation of water on the public lands of the United States to go to waste, when needed by others for beneficial purposes.

**3. Waters and water courses ⬅➡143—Prior appropriator permitted to divert greater amount during season of heavy flow.**

Prior appropriator will not be restricted to limited quantity of water per second where effect of decree will be to deprive it of water used for more than 20 years for irrigation of ranch prior to attempted diversion by other owner, in view of small portion of year during which such water is available, but will be permitted to divert greater amount during short period of heavy flow.

Appeal from the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Suit by the Pacific Live Stock Company against D. M. Read. From a judgment giving it insufficient relief, complainant appeals. Affirmed, as modified.

T. P. Wittschen, Joseph C. Sharp, and David E. Snodgrass, all of San Francisco, Cal., for appellant.

T. A. Brandon, of Winnemucca, Nev., for appellee.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. The decree appealed from in this case adjudged the complainant in the suit (appellant here) the owner of certain specifically described parcels of land known as the "Big Creek ranch," of which at least 200 acres have been under cultivation for more than 25 years and devoted to the raising of hay, grain, alfalfa, and garden and orchard produce, and that at least 300 acres have been fenced and used as pasture land; that the complainant has a prior right to that of the defendant to the suit (appellee here) to sufficient of the waters of Pass creek, Big creek, and of Boyd Basin creek, and of any streams intercepted by the complainant's Boyd Basin creek ditch during the irrigating season of each year to irrigate the described land, the necessary amount of which water for that purpose being 7½ cubic feet per second; that, in so far as Big creek and Pass creek can supply that needed water, it should be taken first from those streams, after the taking of all of which, at the point where the same enters the ranch, the complainant is entitled as a prior right and prior to any claim of the defendant to the suit to divert from Boyd Basin creek, and from the ditch leading from Boyd Basin creek, and from any streams flowing into said ditch, enough more water, measured at the place where the same enters the ranch, to make up the 7½ cubic feet per second of water so awarded the complainant.

In the opinion of the court below, supporting the decree, is the following:

"Complainant and its grantors for about 30 years have been the owners and in possession of 800 acres of land in northern Humboldt county, known as 'Big Creek ranch.' At least 200 acres have been under cultivation, and have produced as high as 500 or 600 tons of hay in a single season. Three hundred other acres have been for many years fenced and used as a pasture. Big creek flows through the premises, and from it complainant and its grantors have for more than 25 years diverted during the irrigating season of each year substantially all its waters and applied them to the crops and feed growing on the land. Three or four miles north of this ranch is another stream, known as Boyd Basin creek. In 1889 or 1890 complainant constructed a ditch from that creek sufficient to convey all the waters naturally flowing therein to Big Creek ranch. The soil cultivated on the ranch is a sandy loam, and for its proper irrigation fully the average amount of water is necessary. Big creek carries from 2½ to 3 times as much water as Boyd Basin creek, and at all seasons of the year carries some water, though, like most Nevada streams, and like Boyd Basin creek, its largest flow is when the warm weather in May and June brings down the spring freshets from the mountains.

"It is impossible to make any finding as to the exact quantity of water carried by either creek. Though there is an abundance of testimony to the effect that, when all the water of both streams is used, it is insufficient for the irrigation of the crops and the pasture, it is also in evidence that the alfalfa dried up several seasons for lack of moisture. It is difficult to avoid the conclusion that water has often been wasted, and frequently used injudiciously, by complainant's employees. That fact alone, however, is not enough to justify an order depriving the company of the right to divert from the two creeks so much water as is reasonably necessary for the irrigation of as much land as was irrigated prior to the time when the defendant in 1919 first attempted to divert water from Boyd Basin creek. The circumstances then attending the actual and contemplated beneficial use of the water by the complainant and its grantors must be given due weight, recognizing the doctrine that there can be no right of diversion in excess of what is actually needed for beneficial uses and purposes then present. In 1919 defendant located a ranch at the head of Boyd Basin creek, and shortly thereafter his wife, Mrs.

Read, made a desert entry on the land in the flat opposite the mouth of Boyd Basin canyon. Defendant diverted the waters of the creek to his own land, and in May, 1921, this suit was commenced."

In the brief of the counsel for the appellant it is said:

"Our only objection to the decree of the lower court is that, while it purports to give 7½ cubic feet per second on paper, that amount of water is in the streams for such a short time during the irrigation season that the practical effect of the decree in limiting the use to that amount early in the season will be to deprive appellant of water which it has used for over 20 years, and which it needs for the proper irrigation of its ranch and the conduct of its business. The practical operation of the ranch and of the supply of water from these streams is such that, unless the greater flow of water coming down in the spring of the year with the melting snows is immediately spread over the property, there is no water for the pasture. For a very limited time in the spring during the thaw the combined flow of all these streams may exceed 7½ cubic feet per second. Then they rapidly fall much below this; two (Pass and Boyd Basin) drying completely on or before July 1st, and Big creek dropping to about 2½ feet or less. The pasture gets its main and only irrigation during the short period of heavy flow. When the streams get down to their ordinary flow, they run but very little, and the water is then barely sufficient to take care of the 200 acres of more highly improved lands; therefore it is only in the beginning of the season, when there is more than 7½ cubic feet per second flowing in the stream, that the pasture is irrigated. Unless the pasture is irrigated during the time of heavy flow, it is not irrigated at all. Owing to the large number of cattle which appellant has in the vicinity, it needs all the grass that it can possibly grow upon its property, and, the more water spread upon the pasture, the greater the growth of grass, and the more beneficial use is made of the land. These facts are all supported by the findings and opinion of the court.

"Considering the stream flow, placing a limitation of 7½ cubic feet per second upon the amount that appellant can take deprives it of water which it had always used and needs for the proper irrigation of its property, and at a time when it can be applied beneficially. Appellant contends that it should be permitted to take more water than 7½ cubic feet in the beginning of the season, and that, if there is to be a curtailment, the use be curtailed later on in the season. The position of appellant briefly is that it should be permitted to take not less than 10 second feet prior to June 15th of any year, with its rights limited on a sliding scale thereafter as to the amount of water which may be diverted."

[1, 2] The evidence shows, and, indeed, it is practically admitted by both sides to the controversy, that the three small streams from which the appellant takes water, and that from which the appellee takes it for the purpose of irrigating land acquired from the government near the head of Boyd Basin creek, come from the canyons of the mountains of Nevada. The court knows judicially that water in many sections of this great Western country is its very lifeblood. The evidence shows that it is so with respect to the properties here in question. In such circumstances it is, in our opinion, contrary to both law and justice to permit any appropriation of water upon the public lands of the United States to go to waste, when needed by others for beneficial purposes.

[3] The judgment appealed from in the present case awards the appellant 7½ cubic feet per second of the waters of the three streams for its lands, without limit as to time, while the evidence in the case, we think, shows that about the 1st of July both Pass creek and Boyd Basin creek become dry, and the water of Big creek greatly diminished; whereas, during the early part of the irrigating season, the flow of all of the streams is comparatively heavy, due to the melting of the snow in the mountains. During that season, the evidence shows, the appellant has been accustomed, for many years preceding the acquiring of any right by the appellee, to irrigate from the said streams its pasture lands, and what it asks, in effect, is that the decree of the court below be so modified as to permit it to use more than 7½ cubic feet of the waters in question during their heavy flow, and less as the streams diminish, instead of 7½ cubic feet per second for the entire year, during the critical period of which two of the streams, according to the evidence, are practically dry. We are of the opinion that the judgment should be modified in that regard.

Some very sensible and practical observations were made upon the general subject by the late able and experienced Judge Hawley, of Nevada, in the case of Union Mill & Mining Co. v. Dangberg (C. C.) 81 F. 73, 118, 119, which we quote:

"The quantity of water flowing in the Car-

son river is dependent, not only on the amount of snow which falls upon the mountains and in the canyon from which the river draws its supply, but also upon the time of the year when it falls, and further upon the amount of rain that comes in the spring or summer season of the year. The truth is that in some years, in every month thereof, there is more than water enough to meet and supply all the demands of the farmers and of the mill owners, and that in seasons of extra drought, for a few months in such years, there is scarcely enough for either. The real controversy between the respective parties is confined to a period of time ranging from July 1st to November 1st of each year, during which there is always liable to be an insufficient quantity of water flowing in the river to enable the parties to make a reasonable use thereof both for irrigating and for milling purposes at the same time. The difficulty in arriving at a proper decree is apparent. The power of regulating or controlling the amount of rain or snow is beyond the jurisdiction of courts. No decree can be framed, which is based either upon riparian rights or of appropriation, or of both, which overlooks the uncertainty of the season, or the necessities of the various litigants, so as to meet the demands of justice and of right. It would be unjust and inequitable to compel the farmers in the valley to allow the water to run down to the mills when the quantity of water was wholly insufficient, to enable the complainant to run its mills with water power. There must be a beneficial use before any protection can be invoked. No provisions should be contained in the decree which would result in depriving one party of the use of the water when the other party could make no beneficial use of it. This would amount to a destruction, instead of a protection, of the rights of the parties. In the appropriation of water, there cannot be any 'dog in the manger' business by either party, to interfere with the rights of others, when no beneficial use of the water is or can be made by the party causing such interference. The same rules govern riparian rights. No riparian proprietor can dam up or withhold the use of the water of a river simply because the river is on his land, or so use it as to prevent its flowing down the channel to others having an equal right thereto, and entitled to an equal and beneficial 'use thereof, when such use could be made of the water except for such wrongful acts. A practical view ought to be taken of all the conditions,

surroundings, and situations. The rights of all parties must be protected by the decree."

See, also, In re Willow Creek, 74 Or. 592, 628, 629, 144 P. 505, 146 P. 475.

The judgment of the court below will be so modified as to permit the appellant 9 cubic feet per second of the waters of the streams up to June 15th each year, and 7½ cubic feet per second thereafter, and, as so modified, it will stand affirmed.